## GROVE BALDWIN *v.* HILO TRIBUNE-HERALD, LIMITED.

### No. 1808.

SUBMITTED SEPTEMBER 21, 1928.     DECIDED OCTOBER 15, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action for libel predicated on the publication of an alleged defamatory article in the Hilo Tribune-Herald. After alleging the corporate existence of the defendant and its ownership and publication of a newspaper called the Hilo Tribune-Herald and its circulation throughout the Island of Hawaii and the Territory of Hawaii and elsewhere in the United States and after alleging that the plaintiff was a reputable physician and surgeon residing in the town of Hilo and his dependence

on his profession for the support of himself and family and the good name and reputation enjoyed by himself and his wife prior to the publication by the defendant of the article complained of the complaint proceeds as follows: "That at Hilo aforesaid on the 4th day of November, 1927, the defendant, Hilo Tribune-Herald, Limited, vindictively and maliciously and for the vicious and wicked purpose of injuring and defaming the reputation, good name, profession and business of this plaintiff, and with intent to bring this plaintiff into public scandal, unsavory notoriety, disgrace, abhorrence, odium, hatred, contempt and ridicule among the people of Hilo aforesaid and elsewhere wherever the said 'Hilo Tribune-Herald' is circulated and with whom plaintiff was or might become in anywise known, and for the purpose of causing plaintiff to be excluded from the society, intercourse and patronage, present and future, of divers good and worthy persons at Hilo aforesaid and elsewhere in the world, and with the intent revengefully, maliciously and designedly to injure and defame this plaintiff in his professional standing and business aforesaid, and to injure and destroy his good name and respectability and cause him to be shunned by a large number of good persons and to cause him to suffer shame, humiliation, mortification, annoyance and great mental anguish, distress and vexation, did compose and publish or cause or procure to be composed and published in said 'Hilo Tribune-Herald,' of and concerning this plaintiff, certain and several false, libellous and defamatory words, matters and things in a composition, as follows:

'THE MERRY-GO-ROUND
'By its Author

'At that it was a great night, a night wherein the crash of glass synchronized perfectly with the crunch of

crab meat to the beautiful tune of anything the boys had heard.

'A night hard to remember much about. . . . .

---

'Things Learned

'But some things were outstanding.

'Very revealing, a night like last night. You learn about people fast.

'For instance that Woods Peters is inconsiderate and impolite. . . . .

'That Mrs. Baldwin, wife of the medicine man, is a gracious midnight host; but her husband is short of manners. He sings bad poetry boldly, berates the Hilo Tribune-Herald, says the M. G. R. is a lotta krat, and as a musician had better stick to the player piano. . . . .

'One thing for the Doc, however: he's a first class mixer.

---

'More things

'Very revealing

'That Gordon Scrutton is inappreciative and has no Hawaiian hospitality. . . . .

'That Jass Balknap is a Godtouched genius instead of a bum.

---

'Old Inconsiderate

'Old Inconsiderate Peters is too thoughtless.

'He ought to know better than to unexpectedly run in on people that are busy wrecking houses. Wrecking houses is hard work. . . . .

'In the first place the boys weren't half through: they still had the piano to upend and the bed sheets to tear up and the goldfish water to drink. . . . .

'Having only scared his maid half to death, broken a few chairs and flooded the bathroom.

'Doctors! Ugh!

'Now Brother Baldwin, comes my turn. . . . .

'I'm glad I'm not a doctor,
If I was I'd die of shames.
I'd rather do some other work
That took a little brains!

'Well, how d'yuh like it?

'And furthermore you're too fat, your voice is raspy; and you look too sweet in purple pajamas to live. . . . .

'And if there is anything I've missed, I'll get that to-morrow. . . . .

'(Now suppose you sing to the people!%@$&@??)

---

'Apologies

'(With the kindest apologies to Mrs. Baldwin.)

---

'Old Inhospitable

'As for Old Inhospitable Scrutton, there's not much to say . . . . . except:

'Hawaiian hospitality is something he don't know nothing at all of!

'If the boys took the trouble to call on me at 2 g. m., and just came to play and break up a little furniture, I certainly would be more courteous than to keep hinting for them to leave.

'And if they wanted to throw my pants out the window and pour water in the bed and smash the medicine (?) chest why the thing to do was to offer them two pairs of pants, two beds and two medicine chests. . . . .

'What does the Bible say, Gordon?

---

'What it says

'Reference for Mr. Scrutton: St. Matthew v: 38-39.

'Ye have heard that it hath been said: "An eye for an eye and a tooth for a tooth:

' "But I say unto you, that ye resist not evil; but whosoever shall smite thee on thy right cheek turn to him the other also!"

'And for further reference read some Tourist Bureau advertising—and learn about our Hawaiian hospitality.

---

'The Artist

'As for Mr. Belknap, I come humbly and on my knees, so to speak, and bow in reverence to real genius. .

'Brother, I have publicly stated that you were a bum, a dubb, a liar, a thief and a bad bad newspaperman who needed a haircut oftener. . . . .

'Ah, but now . . . . . now I know you for what you are . . . . . and respect you.

'Like myself you are a genius.

---

'Finis

'Note to Mr. Belknap

'(And I would like to get a few private lessons from you on the art of telling nice clean parlor jokes.)'

"Therein and thereby saying and falsely and maliciously designing to have it so understood and believed by the readers of said publication and by the public, that the Baldwins (meaning this plaintiff, Grove Baldwin, referred to as 'Doc,' and his wife, Mrs. Grove Baldwin) gave at their home on the night of November 3, 1927, a drinking and feasting party, which lasted until midnight or later, at which the writer of the published composition above set out was present as guest; that the said party was wild and boisterous and that the noise of breaking glass harmonized with the noises made there in crunching and devouring crab meat and the noises made by partakers in telling and singing anything that they had heard; that the participants in said boisterous midnight party, which was presided over by plaintiff's wife at his home, become so irresponsibly excited and hilarious from intoxication that it was difficult to remember the next day much of what had transpired that night, but that certain sketches stood out in the memory of the author of the composition the following day namely:

"That the plaintiff had berated the Hilo Tribune-Herald and said that the Merry-Go-Round was a lotta krat;

"That the plaintiff demonstrated that he was a 'good mixer,' and for the entertainment of his guests sang bad poetry and sung it badly; that he has a harsh, irritating voice, is too fat, and appeared before his guests in purple pajamas;

"That members of the said party given at the home

of plaintiff and his wife were entertained with 'nice clean parlor jokes' by Jazz Belknap, who is by said publication said to have been publicly designated a bum, a liar and a thief, and members of the party became so drunk and roisterous that they adopted the pastime of house wrecking, which they continued until 2 o'clock in the morning;

"That the plaintiff is a 'medicine man' (meaning to describe plaintiff in his profession as a physician) and that in considering this fact the author of the composition shudders in disgust at the thought of doctors, meaning physicians; that, with particular reference to plaintiff and his conduct and capability as a doctor, the profession of doctor of medicine does not require any brains and is despicable business to be ashamed of;

"And then this plaintiff is therein deliberately, maliciously and vengefully taunted, following the imputation that his calling requires no brains, with the words, 'Well, how d'yuh like it;' and is further taunted with the words and characters: '(Now suppose you sing to the people! %$&@??),' thereby meaning that if this plaintiff does not wish to submit in silent shame and suffering to the false report and spiteful and malicious injury done to him by the publication of the above set out scurrilous statements and expletives he can make his complaint to the court and a jury of the people.

"Plaintiff alleges that the public in general and particularly those persons who have read or heard read the publication above set forth understood, construed and interpreted the same to mean that which by the innuendo above set forth the defendant meant and designed to convey to their understanding and did in fact so convey, and that persons who may hereafter read or hear read the said publication will generally construe its meaning in accordance with said innuendo.

"That by reason of defendant's said publication, set out and described as aforesaid, and circulated as aforesaid, the plaintiff has been greatly injured in his repu-

tation, good name, social, professional and business standing, prestige and intercourse and has been brought into disgrace, abhorrence, odium, hatred, contempt and ridicule and has suffered great mental and nervous distress and anguish, and has been otherwise greatly injured and damaged in his rights, property and feelings, all to his damage in the sum of twenty-five thousand dollars.

"Wherefore plaintiff prays that process issue out of this court citing the defendant to appear and answer this complaint, within the time and manner provided by law and the rules of this court, that trial hereon be had before a jury, and that plaintiff have and recover judgment against the defendant in the sum of twenty-five thousand dollars."

No special damages are claimed, general damages only being asked for.

The defendant interposed a general demurrer to the complaint which was sustained and the plaintiff was granted an interlocutory appeal. It is claimed by the defendant that the publication complained of is not on its face injurious or defamatory and inasmuch as no special damages, as distinguished from general damages, are alleged the complaint does not state a cause of action.

It has, of course, long been the law that if words are falsely and maliciously published of a person, manifestly and on their face necessarily imputing to him the commission of a crime or necessarily charging him with such conduct as would naturally and inevitably subject him to disgrace, odium, hatred, contempt or ridicule or injure him in his business or profession, the law conclusively presumes that he has been damaged. The defamatory meaning of the words being unequivocal, in an action brought by the libelee against the libelant on account of them the plaintiff, in order to state a cause of action,

need not allege extraneous facts by way of inducement nor by innuendo point their defamatory meaning and need only claim general damages. We think the newspaper article upon which the present action is predicated is not of this kind. It does not *in haec verba* charge the plaintiff with the commission of a crime or with such conduct as would necessarily and inevitably bring upon him disgrace, abhorrence, odium, hatred, contempt or ridicule. Neither does it impute to him anything that would necessarily and inevitably injure him in his profession. Some portions of the article, while they might be disparaging to a person of delicate sensibilities, are not necessarily and inevitably defamatory.

There is another sort of libel, however, that may be defamatory *per se* and under proper pleading will present a case entitling plaintiff to general damages although no special injury is alleged. If, for instance, words are published of and concerning another which on their face are reasonably susceptible of two meanings, one innocuous and the other defamatory, and the person claiming to be aggrieved by their publication by *innuendo* ascribes to them the defamatory meaning and alleges that they were so intended and were so understood and claims general damages only, his complaint states a cause of action, provided, of course, he also alleges that the words were falsely and maliciously published. In a case of this kind no allegation of special damages is necessary. The very words themselves, if they are susceptible of the meaning ascribed to them by the plaintiff in his innuendo and if they were so intended and capable of being so understood by readers of ordinary intelligence, carry their own poison just as effectually as though they had no other meaning than a defamatory one and for their false and malicious publication general damages are recoverable. They are libelous *per se*. The supreme court of New

618 .

York in *Klaw* v. *New York Press Co.,* 122 N. Y. S. 437, 438, said: "In deciding whether or not an article is libelous, the scope and object of the entire article is to be considered together, and 'such construction put upon its language as would naturally be given to it.' More v. Bennett, 48 N. Y. 472, 476. If the article be susceptible of only one meaning, then the question whether or not it is libelous per se is to be decided as matter of law by the court. Morrison v. Smith, 177 N. Y. 366, 69 N. E. 725; Moore v. Francis et al., 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep, 810. If it be susceptible of more than one meaning, one of which would make it libelous, then it is the office of an innuendo to charge the libelous meaning, and it would be for the jury to determine whether or not the libelous meaning would be ascribed to it by readers of ordinary and average intelligence. If the article be libelous per se without any innuendo, it is not demurrable, even though an innuendo be pleaded of which it is not susceptible. Morrison v. Smith, supra. But if it be equivocal or ambiguous and not necessarily libelous per se, and a libelous meaning of which it be susceptible in one view that may reasonably be taken of it be charged by innuendo, then it will withstand a demurrer, for the plaintiff would in that event be entitled to have the jury instructed that if the publication would be understood by the reader of average and ordinary intelligence and ability, in the libelous sense, then the article is libelous per se, and the plaintiff would be entitled to recover general damages without pleading or proving special damages." The converse of this is equally true. If the words, standing alone, are not reasonably susceptible of the meaning which the plaintiff seeks by innuendo to place upon them they cannot be adjudged inherently harmful and therefore actionable *per se*. The plaintiff

cannot by innuendo enlarge the meaning of the words. As it is sometimes expressed, an innuendo "cannot beget an action." If the words clearly do not and cannot by any fair interpretation be understood to mean what the plaintiff says they mean the innuendo serves no purpose whatever and should be disregarded. If, on the other hand, the words are reasonably susceptible of the defamatory construction placed upon them by the plaintiff the court should so instruct the jury. It would then be the province of the jury to determine whether the words were intended in their defamatory or innocent sense and in which sense they were understood.

It is by this rule that the sufficiency of the complaint before us is to be tested. After reciting the article complained of and its publication by the defendant, the plaintiff by the innuendo above quoted ascribes to certain portions of it a meaning which he claims is *per se* defamatory and which he claims entitles him to general damages. Much of the language used in the article is ambiguous. It may be reasonably said that it is susceptible of being understood in two senses,—one sense being somewhat crudely humorous and therefore harmless; the other sense being that attributed to it by the innuendo and therefore injurious. If it was intended to charge the plaintiff and his wife with giving at their home the kind of party described in the innuendo and if it was so understood by those reading the article, it is defamatory *per se*. The natural consequence of such understanding would be to subject the plaintiff to scorn, odium and contempt and to injure him in his profession, entitling him upon sufficient proof to recover general damages. We think it is not a strained construction of the article to say of it that it is reasonably susceptible of the construction which the plaintiff by his innuendo places upon it.

For the foregoing reasons we think the demurrer should have been overruled. The exception is therefore sustained and the case is remanded with instructions to overrule the demurrer.

*D. E. Metzger* for plaintiff.

*C. S. Carlsmith* and *Smith, Wild & Hoppe* for defendant.