DAVID C. GILBERG, Respondent, *v.* FERRER F. GOFFI, Appellant.

Second Department, July 9, 1964.

518

*Harry Krauss* for appellant.

*David C. Gilberg,* respondent in person.

SAMUEL RABIN, J. This appeal turns upon the extent of immunity to be accorded to the campaign utterances, oral and written, of a candidate for public office.

The learned Special Term held that the complaint stated a case for recovery in defamation, and that questions of fact were raised incident to the defenses of privilege and justification. In our opinion, the evidentiary showing made by each party establishes facts which are sufficient, under two landmark deci-

sions rendered after the Special Term's decision, to warrant the granting of summary judgment in defendant's favor.

By reason of these recent pronouncements, the issues at bar may no longer be evaluated solely by the prior controlling precedents in the law of defamation. Now, all utterances addressed to public officials, when challenged in a civil libel action, must be accorded the constitutional safeguards for freedom of speech inherent in the First and Fourteenth Amendments of the Federal Constitution (*New York Times Co.* v. *Sullivan,* 376 U. S. 254, 264–265). The privilege of a citizen to criticize official conduct is part of the evolving body of the law of libel which now recognizes that public officials, in the performance of their duties, enjoy a concomitant immunity when they speak out on matters of public concern, even if a particular citizen be defamed in the process (*Sheridan* v. *Crisona,* 14 N Y 2d 108). The threat of a damage suit should not be permitted to inhibit or curtail the freedom of expression of either the citizen or the public servant (*New York Times Co.* v. *Sullivan, supra,* pp. 282–283).

In the *New York Times* case, the following principles were authoritatively declared:

(1) The ancient doctrine that the Constitution does not protect libelous publications may no longer be utilized where its application would serve to impose sanctions upon criticism of the official conduct of public officers (pp. 268–269);

(2) Expressions of grievance and protest on a public issue do not lose their constitutional protection by reason of a combination of falsity of factual statement and of defamatory content (p. 273);

(3) Public officials, like Judges, are expected to be " ' men of fortitude ' " when assailed by half-truths, misinformation, charges of gross incompetence, disregard of public interest, communist sympathies, hints of bribery, embezzlement and the like, especially when such charges are hurled in the heat of a political campaign (pp. 272–273);

(4) In cases involving criticism of public officials, a new principle of qualified privilege in the law of libel is to be applied, namely (pp. 279–280): " The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with ' actual malice ' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

(5) This new principle is to be tested by the facts of each particular case in order to ascertain whether the alleged libelous statements were prompted by actual malice (pp. 284–286);

(6) On weighing the evidence, the court is to avoid such result as might suggest " ' that prosecutions for libel on government have any place in the American system of jurisprudence ' " (p. 291); and

(7) The court is likewise to avoid the thwarting of the free expression of impersonal attack on government by investing the remarks with a personal significance (p. 292).

In the *New York Times* case, the plaintiff was a Police Commissioner who sought damages in libel by attributing to himself certain false statements which had been published in an advertisement in the *Times* newspaper with respect to the Montgomery (Alabama) local police force which he headed. Plaintiff's money judgment was reversed for lack of demonstration of direct reference to him in the publication and for lack of proof of defendants' actual malice.

In our opinion, the same deficiencies render insufficient the present plaintiff's cause of action. While the plaintiff claims that he was not a public official, it is our opinion, based upon the proof adduced on the defendant's cross motion for summary judgment, that plaintiff's action is so closely related to criticism of a public official that the *Times* case is determinative and that the plaintiff has no justiciable claim.

The pertinent facts here may be briefly stated:

The Mayor of the City of Mount Vernon was a reputable lawyer who assumed and functioned in his office of Mayor during the period 1960 to 1963. Since June 1, 1960, plaintiff, likewise a lawyer of good reputation and standing, has been a partner in the Mayor's law firm.

Before the Mayor assumed his office, and during his tenure, the *Daily Argus,* a newspaper published in the City of Mount Vernon, reported in various news articles that the question of the adoption and enforcement of a municipal conflicts-of-interest rule had been locally advanced. In March and April, 1958, the *Argus* reported that Alderman Kendall had advocated passage of a local law dealing with conflicts of interest. In September, 1962, additional articles with reference to such a local law appeared in the *Argus.* In November, 1962, the *Argus* published a news article to the effect that one Bornstein, who had been feuding with the Mayor on municipal and political matters, had filed a " complaint " with this court in which he challenged

the right of plaintiff Gilberg to represent clients in the local City Court while his law partner was Mayor of the city. In the same month, the *Argus* further reported that one Zimmerman had sent a letter to the local Common Council urging that a local law be adopted so as to bar a Mayor or his law firm from practicing law in the City Court or before municipal agencies and that the Common Council had referred the letter to the local bar association.

In the Fall of 1963, the defendant, a faithful reader of the *Argus,* became an independent candidate for the office of alderman, election to which position would make him a member of the local Common Council. His rival candidates were two incumbent Republican Aldermen (one of whom was Alderman Kendall) and two Democratic candidates. In the ensuing election campaign the defendant was associated with Bornstein and other opponents of the Mayor who was seeking re-election to that office.

On the night of October 22, 1963, defendant together with Bornstein appeared on the public platform, and both made speeches before an audience. The defendant read his speech from a prepared typewritten manuscript, copies of which had been signed by him and distributed earlier to the press for publication. In his address, in the part now relevant, the defendant made the following remarks:

" One of my opponents claimed credit for being the sponsor of a Conflicts of Interests code. We read in the papers of the charges that the mayor's law firm was practicing in the City Court of Mount Vernon, under conditions which show a clear conflict of interests. Yet, neither of them called for any investigation. Is it that they did not care or that they did not dare?

" They have failed to show any courage as aldermen. There has not been a dissenting vote among them in so long a time that it is difficult to remember when any such thing happened. No group can think so much alike for so long a time on so many subjects.

" It would seem as though someone else is doing the thinking for them and that they are merely the ' Yes ' men for this individual. By being ' Yes ' men, they have allowed our city to become disgraced among all of the cities of our nation.

" Of my Democratic opponents, both are lackeys of the Democratic mayoralty candidate    *    *    *

" Our mayoralty candidate    *    *    *    is a man of recognized decency and integrity. He is our one hope to bring back our city to the sphere of respectability. To do this, he needs alder-

men who are prepared to act for him when action is necessary. As members of his team, my running mate and I will see to it that he gets the legislation he needs to carry out his purpose.''

The defendant's address was reported in the *Daily Argus* in its issue of October 23, 1963. Orally on the following day, and by copy of a letter sent to such newspaper on October 25, 1963, the plaintiff informed defendant that his (defendant's) statements about the Mayor's law firm were false and defamatory; and plaintiff called upon defendant either to justify publicly his remarks or to avow his error. Plaintiff's written communication stated that he was not a '' politician ''; that he sought no public office; that no law, rule or regulation prohibited his law firm from practicing in the City Court; and that his firm had appeared in no case '' where a conflict of interests may or might arise.''

Defendant proffered no formal retraction. In lieu thereof, on October 28, 1963 he sent a letter to the *Argus,* the substance of which it printed in a news article. In such letter defendant referred to the publication in the *Argus* on November 19, 1962 of an article reciting the filing of the Bornstein '' complaint '' to this court, and then went on to state:

'' This fully supports my statement. I have no interest in Mr. Gilberg's method of practicing law, except insofar as it concerns the conduct of the Common Council. I have said and still argue that it was the duty of the Common Council, who on previous occasions, had voiced itself as in favor of a strong conflict of interests law, to have instituted an investigation of the matter. * * * If Mr. Bornstein's charges are sustained in an investigation by the Common Council, it would fall upon that body to adopt appropriate rules for correcting the situation.

'' As a candidate for the office of Alderman, it is my privilege and duty to present the issues to the people, and in that sense, I have brought this forth as such an issue.''

The instant action was thereafter commenced on the theory that the oral address of October 22 which had been reduced to writing, and the writing of October 28, constituted both a slander and a libel of the plaintiff. In his complaint, plaintiff charges in substance that defendant uttered false statements to the effect that the law firm, of which plaintiff is a partner, had practiced law in the local City Court under conditions which show a conflict of interests; and that, by innuendo, the defendant had suggested that the law firm had thereby violated some precept which precluded its practice in that court. The complaint neither pleads special damages, nor avers that the defendant's impugning remarks were uttered with malice.

In his answer, the defendant pleaded a general denial, and, *inter alia,* defenses of lack of malice, qualified privilege, and justification. He also set out the various mentioned publications of the *Daily Argus* relating to a municipal conflicts-of-interest law and the presentations made thereon to this court and to the Common Council; and pleaded that his campaign remarks were not aimed at plaintiff but at his incumbent aldermanic adversaries for the purpose of drawing to the attention of the voters their failure to proceed "with relation to the charge publicly made by the said Bornstein."

In support of his second defense of justification, defendant pleaded that the Mayor's official status as a Magistrate empowered him to act in the City Court and to appoint an acting City Court Judge. Defendant also referred to the Mayor's power of appointment of the Corporation Counsel and various other municipal functionaries, including the local Police Commissioner, and pleaded that these latter appointees appeared in the City Court in the prosecution or defense of divers actions involving the municipality and local law enforcement.

Upon the motions of the respective parties* for summary judgment, the Special Term held that the evidentiary showing as to the defenses of qualified privilege and justification (as corrected) entitled defendant to a trial. The Special Term further held that the issue was not whether defendant had read something in a newspaper, but whether his charge of conflict of interests was objectively true.

On the present appeal, only the defendant seeks review of the denial of summary judgment in his favor. If defendant is correct in his contention that he was entitled to summary judgment on the evidentiary showings, his appeal from so much of the order under review as struck out the defense of truth is moot.

Under the current practice, a motion for summary judgment should be granted where, on the papers and proof submitted, a cause of action or defense "shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party;" and the motion should be denied where any party shows the existence of any issue of fact, other than an issue as to the amount or extent of damages, sufficient to require a trial (CPLR 3212, subds. [b], [c]). In effect, defendant's cross motion for summary judgment was a motion to dismiss the complaint for failing, on an evidentiary showing, to *state* a cause of action (CPLR 3211, subd. [a], par. 7). The

* Defendant did not by cross notice formally move for summary judgment in his favor. He requested such judgment, however, in his affidavit in opposition to plaintiff's motion for summary judgment.

plaintiff's motion for summary judgment, in effect, was an application to dismiss the pleaded defenses for want of substance (CPLR 3211, subd. [b]).

Applying the principles of the *New York Times* case (376 U. S. 254, *supra*) to the facts and pleadings at bar, it is patent first and foremost that the alleged defamatory words of defendant's October 22, 1963 address, set out in paragraph 12 of the complaint, contain no direct reference to plaintiff Gilberg either by name or association with the Mayor's law firm. Construed in the context of indulging in " a clear conflict of interests," defendant's said speech and his press release thereon were limited to practice in the City Court by " the Mayor's law firm." The only proof in this record that such words were susceptible of reference to the plaintiff personally lies in plaintiff's subjective interpretation of the words and in the alleged coincidence that, on October 23, 1963, plaintiff received a number of unidentified telephone messages calling attention to the newspaper article published that day " and the implication of the statement, as the same affected the ethics and legality of law practice in the City Court on my part, [and] my being a member of the ' Mayor's law firm '." Plaintiff's proof on this issue is therefore precisely the same as the complainant's evidence in the *New York Times* case (*supra*). As there stated, the alleged defamatory words " did not on their face make even an oblique reference " to the complainant " as an individual "; and any proof " that he had in fact been so involved " rested " solely on the unsupported assumption that, because of his official position, he must have been " (*New York Times Co.* v. *Sullivan, supra*, p. 289).

In the *Times* case, the position of the complainant was even stronger, since presumably everybody in the City of Montgomery knew or should have known that he was the Commissioner in charge of the police department; and yet the innuendo that the alleged defamatory matter assailing the police applied to him individually was rejected as unavailing on the " assumption " that he was personally involved in any generic criticism of police action. At bar, although plaintiff stated that his position as the active partner of the Mayor's law firm in charge of City Court cases, was known to Bench and Bar and to most litigants, proof is lacking that defendant knew of this situation or that he even knew the plaintiff. In fact, the proof is that plaintiff and the defendant had never met, and that defendant was attacking the Common Council and his incumbent rivals for membership in that body.

Plaintiff's proof utterly fails to connect the defendant with knowledge, actual or constructive, that plaintiff was a member of the "Mayor's law firm." In the absence of proof of such knowledge and in the absence of specific reference in the alleged defamatory statments to the actual name of such law firm or to the particular individuals who comprised it, it is our opinion that plaintiff has failed at the outset to establish that he was personally included in the law firm claimed to have been defamed by defendant. Paraphrasing the language of Mr. Justice BRENNAN in the *New York Times* case (*supra*), the proof adduced as to defendant's utterances of October 22 may be taken as referring to "the Mayor's law firm," but they did not on their face "make even an oblique reference" to plaintiff as an individual; and support for such conclusion rests only on plaintiff's "assumption" and those of his unidentified telephone informants — assumptions that cannot properly be drawn directly from the specific words used in the defendant's text.

Nor is plaintiff's case for personal calumny in any way aided by defendant's writing issued on October 28, 1963 to the *Daily Argus* in lieu of a personal retraction to plaintiff and in justification of his October 22 speech and press release. This later writing mentions plaintiff specifically by name for the first time; but, in our opinion, it does not, by reason of such identification, serve to strengthen the plaintiff's case, as urged by plaintiff. That later writing of October 28 made no charge of any unprofessional activity against the plaintiff personally. It merely emphasized defendant's reliance: (a) upon the *Daily Argus'* publication concerning Bornstein's complaint to this court which "had challenged the right of Mr. Gilberg to represent clients in City Court while his law partner is Mayor of the City;" and (b) upon the fact that such complaint constituted a proper reason why the Common Council should have inquired into the necessity for a code of ethics.

Accordingly, on the proof adduced, we are of the opinion that plaintiff has failed to establish that he had been personally vilified for a lack of professional propriety by any utterance, oral or written, ascribable to the defendant. Plaintiff has established only that the "Mayor's law firm" had been impugned by defendant on a pre-existing claim of conflict of interests which had already appeared in the public press.

In view of the fact that defendant was a candidate for public office; that he was talking about another office-holder's law firm; and that he was calling upon the Common Council to investigate Bornstein's and Zimmerman's pre-existing charges, as already

published, with respect to such law firm, it is our opinion that defendant's utterances can fairly be construed only as part and parcel of a debate on the public issue as to whether Mount Vernon required a code of ethics to govern the practice of law in the City Court by a firm, or a member thereof, in which a partner occupied the office of Mayor. The statement by the defendant that Bornstein's and Zimmerman's presentations of that issue had been published in the papers and that he (the defendant) had read the published article was not false, but in fact true.

Nor is it of any avail to plaintiff to claim that he was not a candidate for any public office and that he was outside the political arena. Obviously the law firm, of which he was a member, had generated the public issue on which the defendant made comment. In our opinion, having entered the fray as champion of that law firm, plaintiff made himself as much a part of the local political campaign as did his law partner, the Mayor. It would be anomalous to hold that the Mayor, as a public office holder, was precluded by the *New York Times* case from suing in libel on a conflict of interest issue affecting his law firm, but that his law partner was individually free to do so on the same subject matter.

Upon the basis of all the proof adduced, it is our opinion that the doctrine proclaimed in the *New York Times* case is dispositive of all the legal issues, actual or potential, here presented. Accordingly, invoking such doctrine, we may summarily dispose of those issues.

On the issue of malice, the plaintiff was bound to show that the defamatory falsehood relied upon, growing out of the Mayor's conduct as a public official, was made with "actual malice." Plaintiff was required to show that the defendant's utterances were made with knowledge that they were false or with a reckless disregard as to their falsity. Examining the proof tendered on this issue, it is our view that plaintiff produced no evidence that defendant was aware of any erroneous statements or that he was in any way reckless in that regard. At best, it might be said that defendant was negligent in failing to ascertain the truth or accuracy of the details supporting the prior claims of Bornstein and Zimmerman to the effect that the Mayor's law firm had indulged in the practice of law in circumstances involving a conflict of interests. However, as noted in the *Times* case, a finding of negligence in failing to discover misstatements is "constitutionally insufficient to show the recklessness that is required for a finding of actual malice" (376 U. S. 254, 288).

On the issue of privilege, as previously indicated it is plaintiff's contention that defendant could derive no immunity for his utterances, since plaintiff was neither a public officer nor a political candidate. But that contention, as already noted, is untenable. It is our opinion: (a) that in submitting "the Mayor's law firm" as an actionable issue, plaintiff has inextricably interwoven his personal and individual status with that of the firm; (b) that the firm was a proper subject for comment in the public domain; and (c) that in the context of the utterances made, plaintiff and the firm necessarily constituted one and the same juridical person.

Accordingly, and solely because the plaintiff's papers fail to make out an actionable wrong, it is our conclusion that the defendant's cross motion for summary judgment should be granted. We see no need, therefore, to discuss defendant's alternative point that his third defense of truth was erroneously dismissed.

In reaching this conclusion, we express no opinion on the underlying controversy which plaintiff has sought to bring to the surface, i.e., the charge that the Mayor's law firm had offended any professional standards of conduct. In our opinion, the propriety of the firm's conduct, or of plaintiff's individual conduct, is not a question for judicial determination in the instant action. The only justiciable questions properly here are: (a) whether such conduct had become a public question; and (b) whether, within the limitations laid down in the *Times* case, the defendant as a candidate had the right to comment thereon as he did. It appears to us that the defendant had such right, and that plaintiff and his law firm must find solace in the philosophy that men in public life must be "men of fortitude" who must endure exposure to the vicissitudes of argument in the public forum, where half-truths, misinformation, and worse, are not uncommon in the furor and in the tempo of a political campaign. In sum, it is our view that discussion of a need for a municipal code of ethics to bar certain activities on the part of a public official and his associates is not tantamount to saying that the activities sought to be prohibited are, prior to the adoption of such code, wrongful per se. In that light, plaintiff's failure to prove his individual defamation and defendant's actual malice are omissions which are fatal to plaintiff's case.

Within the periphery of the new body of case law, we hold, on a balancing of interests, that democratic government is best served when citizens, and especially public officials and those who aspire to public office, may freely speak out on questions of public concern, even if thereby some individual be wrongly

calumniated (*Sheridan* v. *Crisona*, 14 N Y 2d 108, *supra*; *Spalding* v. *Vilas*, 161 U. S. 483, 498; *Matson* v. *Margiotti*, 371 Pa. 188; *Manceri* v. *City of New York*, 12 A D 2d 895). If by reason of such utterances a defendant is immune from liability, he does not lose his immunity when the utterances are passed on to the press for publication in the same text as previously delivered (*Barr* v. *Matteo*, 360 U. S. 564, 574–575; *Mellon* v. *Brewer*, 18 F. 2d 168; *Glass* v. *Ickes*, 117 F. 2d 273).

Accordingly, the order under review, insofar as appealed from and insofar as it denied defendant's cross motion for summary judgment, should be reversed, without costs; such cross motion should be granted, dismissing the complaint; and the appeal, insofar as it relates to the plaintiff's motion to strike out the third defense should be dismissed as moot.

CHRIST, BRENNAN and HOPKINS, JJ., concur with RABIN, J.; BELDOCK, P. J., dissents and votes to affirm the order, with the following memorandum: In my opinion, the decision in *New York Times Co.* v. *Sullivan* (376 U. S. 254) is distinguishable from the case at bar. That case concerned the alleged criticism of the official conduct of a public official. The instant case concerns criticism of a public official's private practice of the law. That the plaintiff here was known by the defendant to be a law partner of the public official, clearly appears from the fact that plaintiff's name was included in the name of the law firm and from the fact that the November 19, 1962 article which appeared in the *Daily Argus*, and which was defendant's basis for his October 22, 1963 speech, specifically mentioned plaintiff by name. In my opinion, defendant's speech accuses the Mayor and his law partners of unethical conduct in their practice of law. Therefore, it was sufficient to defeat defendant's cross motion for summary judgment dismissing the complaint.

Order, insofar as appealed from and insofar as it denied defendant's cross motion for summary judgment, reversed, without costs; such cross motion granted and the complaint dismissed, without costs. Appeal, insofar as it relates to the plaintiff's motion to strike out the third defense, dismissed as moot.