Eugene B. KEOGH, Plaintiff,

v.

Drew PEARSON, and the Washington Post Company, Defendant.

Civ. A. No. 3788-62.

United States District Court
District of Columbia.

Aug. 16, 1965.

Philip Handelman, Washington, D. C., for plaintiff.

James H. McGlothlin, Covington & Burling, Washington, D. C., for defendant, The Washington Post Co.

John Donovan, Washington, D. C., for defendant, Drew Pearson.

LEONARD P. WALSH, District Judge.

This matter originally came before this Court on a Motion for Summary Judgment filed on behalf of defendant The Washington Post Company, and also on a Motion to Strike the opposition of plaintiff thereto. The Court denied both motions on March 25, 1965.

Thereafter, on March 29, 1965, defendant Washington Post filed a Motion to Reconsider Denial of Summary Judgment; and defendant Drew Pearson filed a Motion to Reconsider Order of March 25, 1965. Plaintiff filed a Motion to Strike the motion of defendant Pearson. On June 21, 1965, the Court heard argument on all of said motions and the same were submitted.

This is a libel action. Plaintiff is a Member of Congress from the State of New York. Defendant Washington Post is the publisher of a daily and Sunday newspaper in the District of Columbia. Defendant Pearson is a Columnist, whose column, "The Washington Merry-Go-Round", is widely syndicated by Bell Syndicate, Inc., originally a co-defendant in this action. The Washington Post publishes the Pearson column.

The complaint alleges defendant Washington Post published certain syndicated columns written by defendant Pearson which contained false and defamatory matter which has libeled the plaintiff, and that defendant did so maliciously and with intent to injure the plaintiff. Plaintiff alleges that defendant Washington Post, in publishing the particular columns of defendant Pearson, was grossly negligent and reckless, in view of the nature of the defamatory matter and the writer's reputation among journalists.

I. Defendant Pearson's Motion to Reconsider Order of March 25, 1965; Plaintiff's Motion to Strike Motion of Defendant Pearson.

This cause of action was originally filed on December 6, 1962, and numerous motions and pleadings have been filed by all parties. It is noted that during the time the case has been pending, defendant Pearson has filed a separate answer and individual motions. Prior to his present motion he has filed no pleadings jointly, nor joined in any pleadings filed on behalf of defendant Washington Post.

No motion for summary judgment was filed on behalf of defendant Pearson, nor was he a party to the motion of defendant Washington Post. Had the Court granted Washington Post's motion for summary judgment, defendant Pearson would have remained a party to the action. He suffers no injury by its denial.

Defendant Pearson not being a party to the motion for summary judgment lacks standing to request the court to reconsider its denial.

"It is settled law that even a party cannot appeal from a decision which is not adverse to him." Milgram v. Loew's, Inc., 192 F.2d 579, p. 586 (3rd Cir., 1951), cert. den. 343 U.S. 929, 72 S.Ct. 762, 96 L.Ed. 1339 (1952).

Accordingly, plaintiff's Motion to Strike will be granted.

## II. Motion to Reconsider Denial of Summary Judgment.

This Court denied the motion for summary judgment on the ground that there was "doubt * * * as to granting of the motion for summary judgment, and when there is such a doubt it should be resolved against the moving party, and summary judgment should be denied." Defendant Washington Post now requests the Court to amend its order to include a statement that there is involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this litigation. If this amendment is granted, the Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from this order pursuant to 28 U.S.C. § 1292(b).

Defendant Washington Post, both in its motion for summary judgment and in its instant motion for reconsideration, has maintained that the publication of such matter, when directed against a public figure acting in his official capacity is privileged, and argues that, lacking a showing of actual malice, the defendant Post is entitled to summary judgment as a matter of law. Defendant Post has relied upon the recent cases of New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)[1]. In order to prove actual malice under the New York Times standard, one must prove that a statement was made with "knowledge that it was false or with reckless disregard of whether it was false or not." (276 U.S. at page 280, 84 S.Ct. at page 726). The Garrison standard is: "false statements made with a high degree of awareness of their probable falsity." (379 U.S. at page 74, 85 S.Ct. at page 216).

This Court recognizes that these decisions weigh heavily against implying malice from the face of the publication. However we do not believe that the decisions of the Supreme Court forbid such implication.

Defendant cites the decision of Judge Jones of this Court in the Arscott case as holding to that effect. (Arscott v. The Washington Post, Civil Action No. 1025–61, (D.C., D.C., May 1, 1964, decided without opinion). However, we have examined the transcript of that trial and make no such finding.

█ The Supreme Court has not spoken to this point. It is difficult to read into the decisions an intent that any and all material, no matter how slanderous and defamatory, is now to be held immune from any implication of an intent of malice until such intent is established from outside facts. The standard for malice is not actual ill will. (Garrison, 379 U.S. p. 78, 85 S.Ct. 209) It is a standard of recklessness with the truth; the Court is concerned with degrees of probable falsity. We recognize that the automatic implication of malice under the prior "libel per se" rules are clearly eliminated in libel cases involving public figures. The Court held in the Times case:

"* * * that the rule of law applied by the Alabama courts [a libel per se statute] is constitutionally deficient for failure to provide the safeguards for freedom of speech

---

[1]. Defendant has also relied upon Arscott v. The Washington Post, Civil Action No. 1025–61 (D.C., D.C., May 1, 1964); Afro-American Publishing Co. v. Jaffe, No. 18,363, D.C.Circuit, (May 27, 1965);

Gilberg v. Goffi, 21 A.D.2d 517, 251 N.Y.S. 2d 823 (1964); and Schneph v. New York Post Co., 23 A.D.2d 822, 259 N.Y.S.2d 775 (April 22, 1965).

and of the press that are required by the First and Fourteenth Amendments in a libel action brought by a public official against critics of his official conduct." (Times, 376 U.S. page 264, 84 S.Ct. page 717) However, the elimination of the automatic per se implication of malice does not necessarily preclude any and all implications of malice from being drawn from the face of a defamatory statement. As defamatory statements become more and more vindictive, cruel and scandalous, they increasingly give cause to the printer and publisher to take care. He who tends to disregard the vengeful nature of his printing, tends to recklessly have disregard for the truth.

█ To hold this position is not to return to the old standard of "reasonable belief," specifically rejected by the Court in Garrison (379 U.S. at pages 78 and 79, 85 S.Ct. 209). We do not maintain that the Times standard makes publishers responsible for the lack of ordinary care in the editing of syndicated columns; but rather that the standard makes them responsible for recklessness, and that one of the essential ways for determining recklessness is through an investigation of the printed material itself.

█ If this interpretation of the Supreme Court's definition is correct, then defendant Post's employees' affidavits of actual ignorance [2] may be insufficient to immunize them from being found to have acted maliciously in publication of this matter. There would be a time in which the publisher would be forced to investigate the truthfulness of obviously defamatory material.

█ Whether or not this state was reached in the instant case is a question to be determined at the time of trial unless there is no material variance between this case and the prior cases cited by the defendant. The prior cases can be distinguished upon the following grounds:

1. In the present case, the defamatory material is directed against a single individual, identified by name. In the New York Times case, the plaintiff, Sullivan, (Commissioner of Police), was not libeled by name, and specific mention was not even made of the "Commissioner of Police" as such. The only libel alleged was that which was to be implied from criticism of police work within the Commissioner's area of supervision. In Garrison, no specific person was libeled; rather, statements were made against eight judges of the Criminal District Court of the Parish in their capacity as judges.

2. The allegations in the instant case are more serious than in the cases cited by defendant. The plaintiff alleges in his complaint that the defendant published one article which "intended to convey that plaintiff had been influenced in his official actions and votes by the receipt of money and that he was implicated in a criminal attempt to bribe a Federal Judge but was spared from prosecution because of his close political associations with the President and the Attorney General of the United States." (Complaint, p. 5), and another article which "intended to convey that plaintiff had been influenced in his actions and votes by the receipt of money and that, for pecuniary gain to himself, the plaintiff championed the causes of special interest groups," (Complaint, p. 7).

If it can be established that plaintiff was, in fact, falsely accused of the acts alleged, he has been more seriously defamed than the plaintiffs in any of the cases cited by the defendant.

3. The Washington Post pays defendant Pearson for the right to run his column. In the Times case, the publication was an advertisement paid for by

2. See affidavits of James Russell Wiggins, Executive Vice President and Editor of The Washington Post Co., and Joseph Paull, Assistant Managing Editor, stating that at the time of publication each man had "no reason to believe or evidence causing me to suspect that the Drew Pearson articles * * * contained any untrue or false statements."

the Committee to Defend Martin Luther King.

4. The Martin Luther King Committee was a petitioner and an ardent advocate of a cause. A publisher holds Mr. Pearson out to be a reporter of and commentator upon facts.

5. The Times petition was endorsed by several prominent persons. Mr. Pearson was writing under his own name.

Thus, the instant case can be distinguished from Times and from Garrison. Issues of fact are presented here, including the truth or falsity of the statements and the publisher's "recklessness" or "lack of recklessness" in publishing the columns.

For this reason, this Court is of the opinion that the present standard for "actual malice" does not as a matter of law, dictate the necessity for granting a summary judgment for defendant in this case. However, this Court is aware that there is substantial ground for a difference of opinion as to the law which we have cited in supporting this holding, for, in handling of libel actions the courts have not yet had opportunity to fill in the interstices in the law which have resulted from the recent changes wrought by the Times and Garrison cases. The law in this area is still indefinite, and there are substantial grounds for differences of opinion upon the following questions of law:

1. Does the new definition of actual malice not only preclude per se presumptions of malice, but also prohibit the drawing of any implication of malice whatsoever from the face of the defamation? If so, the defamatory nature of this publication would be immaterial. Lacking any further proof of actual malice, defendant's affidavits asserting actual ignorance would be an adequate defense and this matter could be decided by summary judgment as a matter of law.

2. Has the Supreme Court afforded an absolute privilege to those who, without knowledge of the false nature of their statements, would seek to criticize a Congressman acting in his public capacity? The cases maintain that the granting of the privilege is tied to the concurrent privilege of the public figure (Times, 376 U.S. pages 282–283, 84 S.Ct. 710; Garrison, 379 U.S. page 74, 85 S.Ct. 209). Representative Keogh's privilege while on the Floor of the House is absolute. (U.S.Const., Art. I, Sect. 6). Does the Court intend a precisely concurrent privilege for his critics? If so, the critic's privilege is also absolute.

■ This Court recognizes that the Times and Garrison cases leave substantial grounds for a difference of opinion upon these controlling questions of law. To resolve such differences would materially advance the present case insofar as defendant Washington Post is concerned. Therefore, this Court will amend its Order of March 25, 1965, and thus permit the defendant Washington Post to seek a ruling by the United States Court of Appeals for the District of Columbia Circuit, under the provisions of 28 U.S.C. § 1292(b).

Counsel for Defendant Washington Post to submit an appropriate order.