Edwin A. **WALKER**, Plaintiff,

v.

**COURIER–JOURNAL AND LOUIS-VILLE TIMES COMPANY, Inc.,** and **WHAS, Inc.,** Defendants.

Civ. A. No. 4639.

United States District Court
W. D. Kentucky.

Sept. 23, 1965.

232

Richard C. Oldham, Clinton R. Burroughs, Louisville, Ky., for plaintiff.

Wilson W. Wyatt, Edgar A. Zingman, Louisville, Ky., for defendants.

JAMES F. GORDON, District Judge.

This cause comes on before the Court on the Defendants' Motion to Dismiss the Plaintiff's Complaint, as amended.

On September 30, 1963, the Plaintiff, Edwin A. Walker, a former Army Major General, filed this action for actual and punitive damages for libel in the sum of Two Million Dollars, against the Defendants, Courier-Journal and Louisville Times Company and WHAS, Inc., Kentucky corporations, with their principal places of business in Louisville, Kentucky. Jurisdiction of the Court over this action is fixed by Title 28 U.S.C. § 1332.

The Defendant corporations, on October 1, 1962, October 2, 1962 and October 3, 1962, published in their newspapers and/or broadcast over their radio and television facilities, various news items or stories concerning the rioting on the campus of the University of Mississippi, in the City of Oxford, Mississippi, which said published matter had been received by Defendants from national news gathering agencies to which Defendants were subscribers.

The news items or stories so published and complained of by the Plaintiff stated in substance, that the Plaintiff, Walker, had led a charge of rioters against United States Marshals who were present on the University of Mississippi campus carrying out the orders of the United States Courts requiring integration of enrollment of whites and negroes at said University. Plaintiff, Walker, alleged that such items imputed to him that he was a "trouble maker", that he was "participating" in the occurrences taking place in Oxford, all in the context used of inciting of the students to riot, and that the publication reflected libelously on the honor, character and reputation of the Plaintiff.

This Court has considered the briefs and memoranda submitted by counsel for the parties and taking judicial notice of the public events relating thereto which were widely reported throughout the Nation and are matters of common knowledge, and further treating as true (for the purpose of passing upon this Motion to Dismiss) the factual allegations of the Complaint, as amended, arrives at the following conclusions which are the basis of its final Order entered herein.

Following the filing of this action the Supreme Court of the United States handed down its Opinion in New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (October Term, 1963) wherein said Court in legal effect federally preempted the law of libel in matters of "grave national concern" involving "public officials" with the announced doctrine that

" * * * [C]onstitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

There can be no question but that the serious occurrences at the University of Mississippi wherein the State of Mississippi and the Federal Government were locked in conflict as to the educational integration of the races was a matter of "grave national concern." The Supreme Court of the United States has classified the integration struggle as "one of the major political issues of our time."

Thus, it can be seen that had the Plaintiff, Walker, been a "public official" at the time of this occurrence, this Court's task would have been automatically relegated to a decision *only* of the *one issue* of whether or not the Defendants herein had published the statements attributed to them with "actual malice", that is, with knowledge that the statements were false or with reckless disregard of whether or not they were false.

However, the matter is not so simple, for this Court notes with significance that in laying down the doctrine of "actual malice" in the Times case, the Supreme Court quoted with approval from the case of Coleman v. MacLennan, 78 Kan. 711, 98 P. 281, 20 L.R.A.,N.S., 361 (1908) as follows:

"This privilege extends to a great variety of subjects and includes matters of public concern, *public men,* and candidates for office." (Emphasis added)

and in conclusion the Court stated:

"We hold today that the Constitution delimits a State's power to award damages for libel in actions brought by public officials against critics of their official conduct. Since this is such an action, the rule requiring proof of actual malice is applicable." (Page 283 of 376 U.S., page 727 of 84 S.Ct.)

In connection with the last above quoted language, the Supreme Court included a footnote to its Opinion (Footnote 23) in part, as follows:

"We have no occasion here * * * to specify categories of persons who would or would not be included."

From this language I believe the Supreme Court of the United States has served clear notice that the broad Constitutional protections afforded by the First and Fourteenth Amendments will not be limited to "public officials" only, for to have any meaning the protections must be extended to other categories of individuals or persons involved in the area of public debate or who have become involved in matters of public concern. If the Supreme Court intended to limit its holdings to "public officials" only, *then why Footnote 23?* I subscribe that Footnote 23 is of vast importance in understanding the intended scope of the Supreme Court's Opinion, for it is a departure from the Court's traditional rule of basing its decision on the narrowest Constitutional grounds and is interpreted by this Court as giving special significance to the broad language adopted in arriving at its decision.

The Plaintiff, Walker, is of course not a "public official" within the commonly accepted meaning of the words. However, he was, as he identifies himself in his own Complaint, a person of "political prominence." This Court takes judicial notice that Plaintiff Walker's public life is generally well known to the people of this Nation, that he was the subject of nationwide news reports while on duty as an Army General and also as a candidate for Governor of Texas, and that he has in the past made vigorous public announcements on matters of public concern. Plaintiff was, by his own choosing, present in Oxford, Mississippi, on the occasion of the turmoil after announcing on radio and television his in-

tention to be present there and having called upon others to join with him there in support of his publicly stated position on the matters of public concern there in issue.

Had not Plaintiff thereby become a "public man"? Could he not have reasonably foreseen that his being a person of "political prominence" his presence in Oxford would be taken cognizance of by the press? Had not Walker interwoven his personal status into that of a public one whereby he would become the subject of substantial press, radio and television news comment; thus magnifying the chance that his activities would be "erroneously" reported? This Court so believes.

■■ I therefore reach the inescapable conclusion that the protective "public official" doctrine of "actual malice" announced in New York Times v. Sullivan is in common reason and should be applicable to a "public man" as well, and that the Plaintiff, Walker, was such a "public man" under the circumstances involved here. "Public men are, as it were, public property."

My application of the doctrine of New York Times v. Sullivan to the facts here in issue finds authority not only in the logical dictates of Footnote 23 discussed above, but in the reasoning and philosophy underlying the Times Opinion and in the critical discussion in legal commentaries and recent decisions of other courts. The decision of Judge Friendly in Pauling v. News Syndicate Company, 335 F.2d 659 at 671 (2d Cir. 1964), favorably presages the result here. See also Gilberg v. Goffi, 21 A.D.2d 517, 251 N.Y.S.2d 823 (1964); Pearson v. Fairbanks Publishing Co., (Unreported, Superior Ct. of Alaska, 4th District, Nov. 25, 1964); and Pedrick, Freedom of the Press and the Law of Libel, 49 Cornell L.Q. 581, at 592 (1964); 9 Vill.L.Rev. 534 (1964).

I adopt this position with full understanding of the fact that by such extension of the scope of word meaning I am perhaps "plowing new ground" in legal effect, but also with the accompanying conviction that not to do so would negate the spirit of the Times Opinion which I believe to be a " * * * profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide open * * *." Public debate cannot be "uninhibited, robust and wide open" if the news media are compelled to stand legally in awe of error in reporting the words and actions of persons of national prominence and influence (not "public officials") who are nevertheless voluntarily injecting themselves into matters of grave public concern attempting thereby through use of their leadership and influence, to mold public thought and opinion to their own way of thinking. If any person seeks the "spotlight" of the stage of public prominence then he must be prepared to accept the errors of the searching beams of the glow thereof, for only in such rays can the public know what role he plays on the stage of public concern— often, regretfully, a stage torn in the turmoil of riot and civil disorder, whereon error in reported occurrence is more apt to become the rule rather than the exception.

This is particularly so here where open riot and turmoil with accompanying destruction of property, injuries and death turned portions of the University of Mississippi campus into a strife beset no man's land through the dark hours of the night.

Therefore, having applied the doctrine of the Times case to this action, this Court moves on to a consideration of this record, upon the sole remaining question: whether or not these defendants have been guilty of "actual malice" in their publications of data furnished them by national news gathering agencies.

■■ Plaintiff, Walker, is bound to show that the defamatory falsehoods relied upon were not just that "erroneous statement * * * inevitable in free debate" noted by Justice Brennan, (New York Times Co. v Sullivan, supra 376 U.S. at 271–272, 84 S.Ct. at 721) but that they were made with knowledge that they

were false or with a reckless disregard of their falsity. The question of the existence of actual malice from the facts taken as true is a matter of law to be determined by the Court.

An examination of the record reflects that the information published by Defendants was furnished to them by national news gathering agencies to which they subscribed and was furnished in the ordinary course of news dissemination and published routinely by defendants in the ordinary course of their business endeavors—the dissemination of news to the general public.

Everyone knows that news of any matter of public concern possesses a limited lifetime for to be news it must be published with promptness and dispatch in order that the public be kept informed as to the actions of "public men" and their activities in connection with "matters of public concern." There is just no such thing as interesting and saleable *old* news.

This Court is of the opinion that the Defendants had the right to rely upon the reputable national news sources which furnished them the news items in issue here, and further that the republication of those items by the Defendants, with the errors therein, within the time limits and under the circumstances (ordinary course of dissemination) was not unreasonable. Defendants, in their newspaper and radio and television publications, could not be deemed in reasonableness by the Plaintiff or the public to be warranting the authenticity of the republication of events transpiring from places *far distant*, nor to be assuming the burden of verifying in advance the items reported to them from an *atmosphere of violence and turmoil* by established news gathering agencies, while at the same time meeting the public need and demand for prompt publication and dissemination of news on matters of "public concern."

We must have an informed society. The reliance upon or republications by defendants of the reports of national news gathering agencies as here occurred is, in this Court's opinion, insufficient to establish a "reckless" disregard of the facts, or knowledge of falsity, now *Constitutionally necessary* to support an action for libel of the kind stated herein.

Indeed, the Plaintiff's very actions have established the facts negativing that "actual malice" which is required to sustain his action. This Court cannot be deemed not to know that which is known widely and generally to the public at large.

This Plaintiff has filed actions, seeking recovery for libels substantially similar to those alleged here, against the Associated Press in Texas, Colorado, Louisiana and Mississippi; against newspapers in Texas, Louisiana, Georgia, Florida, Missouri, Colorado and Wisconsin; and against Newsweek Magazine in Oklahoma.

Furthermore, the news stories complained of were furnished by national news gathering agencies to, and republished by, the principal newspapers, news magazines and radio and television stations throughout the United States.

In addition to the Court's judicial notice, the geographical scope and number of Plaintiff's suits and the virtual universality of the publication of the stories complained of, is proof positive of the extensive republication by news sources throughout the Country of the releases challenged here.

These facts clearly negative the possible attribution of "actual malice" to any single publisher.

If, possession of contrary information in the New York Times' own files would support "at most a finding of negligence in failing to discover the misstatements, and is Constitutionally insufficient to show the recklessness that is required for a finding of actual malice", I can conceive of no basis for a finding of actual malice in the reliance upon and republication of news reports supplied here by reputable news gathering agencies. At most, such reliance could only be that "Constitutionally insufficient" negligence referred to by the Court. New

York Times Co. v. Sullivan, 376 U.S. 254, at 287–288, 84 S.Ct. 710. Consistent with the later statement of the Supreme Court in Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 at 133 (1964), I find that under the facts alleged here the statements in issue cannot have been "made with the high degree of awareness of their probable falsity demanded by New York Times."

Accordingly, it is this Court's opinion that the doctrine proclaimed by the New York Times case is dispositive of all the issues here presented and, therefore, Defendants' Motion to Dismiss is sustained and the Plaintiff's Complaint is dismissed with prejudice, by separate Order contemporaneously issued herewith.