SAMANTHA JAMES, Appellant, v GANNETT CO., INC., Respondent.

Fourth Department, April 23, 1975

*Charles A. Schiano (Charles Baisch* of counsel), for appellant.

*Nixon, Hargrave, Devans & Doyle (John B. McCrory* of counsel), for respondent.

SIMONS, J. Plaintiff is a belly dancer. She earns her living by performing in nightclubs. In a feature article appearing in defendant's newspaper, it was suggested that plaintiff had another source of income. The article contained these two statements attributed to her: (1) "and she admits to selling her time to lonely old men with money, for as much as $400 per evening in one case 'just to sit with him and be nice to him' " and (2) "This is my business. Men is my business." Plaintiff claims that by these words, purporting to be direct quotations of her remarks during the interview with defendant's reporter, the article pictured her as engaging in illegal and immoral activities, or at the very least, it degraded her before the public.

Special Term granted defendant's motion for summary judgment holding that plaintiff is a public figure and that she, therefore, may not establish a cause of action for defamation without proving actual malice under the rule in *New York Times Co. v Sullivan* (376 US 254).

Fairly construed, plaintiff's pleadings make it clear that the

substance of her claim is that these statements were never uttered by her but were concocted by defendant's reporter. Manifestly, if defendant's reporter fabricated the quotations, then defendant was guilty of actual malice in the constitutional sense because each quote was published "with knowledge that it was false or with reckless disregard of whether it was false or not" *(New York Times Co. v Sullivan, supra,* pp 279–280).

We tolerate the inevitable misstatements which occasionally occur in the exercise of uninhibited speech and press because of our national commitment to free expression. That commitment may permit without penalty the erroneous description of a public figure as a prostitute when made without actual malice but there is no overriding constitutional principle which excuses a newspaper from falsely depicting plaintiff as a self-proclaimed prostitute. Calculated falsehood falls outside "the fruitful exercise of the right of free speech" *(Rosenbloom v Metromedia, Inc.,* 403 US 29, 52) and falls within the class of publications for which liability may be imposed under the *New York Times* standard. The purpose of the *New York Times* rule is to promote the search for truth—not to encourage embellishment of the facts, and particularly not to encourage spicing-up a story with clearly libelous fabrications (see *Cantrell v Forest City Pub. Co.,* 419 US 245; *Steak Bit of Westbury v Newsday, Inc.,* 70 Misc 2d 437, 442-443).

The requirement that defendant be answerable for the accuracy of direct quotations attributed to plaintiff under the facts of this case does not impose an onerous burden upon it and does not run afoul of the principle of free discussion stated in the *New York Times* case. This is not a case which focuses on the standards of investigation of the truthfulness of the matter reported or on the degree of awareness of probable falsity; defendant's publication purported to repeat statements made by plaintiff herself during the course of a prearranged interview. There was no immediacy to either the interview or the publication of this feature story as a part of a Sunday news supplement and the fact that there is no issue of misquotation or mistaken attribution of the remarks negates any suggestion of negligence or honest error. The falsity, if it existed, was in the representation that plaintiff had so spoken of herself. If she did not do so defendant, through its employee, knew of the falsity of its publication. Plaintiff's cate-

gorical denial of the statements attributed to her in defendant's newspaper created a question of fact with respect to the falsity of the quotations and the concomitant knowledge of the falsity on the part of defendant.

The order should be reversed and the motion for summary judgment denied.

CARDAMONE, J. (dissenting). Samantha James, the appellant in this case, is an exotic belly dancer who performs publicly at the Encore Club in Rochester, New York. As a result of an interview with a reporter for the respondent Gannett Co. Inc., an article appeared on July 9, 1972 in the *Upstate,* a Sunday supplement to Rochester's *Democrat & Chronicle* published and distributed by respondent, titled "Samantha's Belly Business". Appellant claims that this feature story libeled her by the publication of these words: "and she admits to selling her time to lonely old men with money, for as much as $400.00 an evening in one case, 'just to sit with him and be nice to him'" and, later in the same story this statement attributed to appellant appeared: "this is my business. Men is my business".

In the first cause of action of her complaint appellant alleges that the quoted portions of the story were "wholly false" and that respondent knew or should have known that the statements were untrue. In her second cause of action appellant contends that by these statements the respondent meant and "was understood by the readers of said newspaper as meaning that (appellant) was acting as a prostitute who was offering her body and her time for sale at a price". Special Term concluded that appellant is a public figure and granted respondent's motion for summary judgment. The majority, while conceding that appellant is a public figure would reverse and grant a trial on the question of fact which they find is created by the pleadings. We dissent.

The First Amendment to the Constitution of the United States provides that "Congress shall make no law * * * abridging the freedom * * * of the press". Section 8 of article I of the New York State Constitution contains a like provision.[1] Prior to the Supreme Court's decision in *New York Times Co. v Sullivan* (376 US 254) these constitutional guarantees of freedom of speech and of the press did not protect

---

1. It states that "every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

libelous utterances *(Roth v United States,* 354 US 476; *Beauharnais v Illinois,* 343 US 250; *Chaplinsky v New Hampshire,* 315 US 568; *Robertson v Baldwin,* 165 US 275). In *New York Times,* the Supreme Court first held that a public official could recover from the media only upon proof that he had been libeled knowingly or with reckless disregard for the truth and that plaintiff has the burden of proving such "actual malice" with "convincing clarity" (pp 280, 285–286). This Judge-made rule added to State tort law a constitutional zone of protection for errors of fact caused by negligence (see *Time, Inc. v Page,* 401 US 279). The rationale of the *New York Times* case was that there is a special realm of public debate with respect to public issues that is central to the purposes of the first amendment and which deserves special protection. Although there is no public interest in protecting false statements, it was feared that assessing damages for honest errors in the criticism of a public official would result in a debilitating self-censorship.

Three years after *New York Times Co. v Sullivan* the Supreme Court in *Curtis Pub. Co. v Butts* and *Associated Press v Walker* (388 US 130) imposed upon public figures the same burden of proof as had been applied to public officials. Thereafter in *Rosenbloom v Metromedia* (403 US 29) a completely fractionalized court further extended the *New York Times* principle to private individuals who were defamed in the course of a broadcast discussing an issue of public concern. Then, on June 25, 1974, the Supreme Court decided *Gertz v Robert Welch, Inc.* (418 US 323), retreating from its position in *Metromedia*[2] and ruling that a prominent attorney was not a "public official" or a "public figure" but rather a private individual who, as such, deserved a greater degree of protection. Unlike the public figure who has either sought publicity for his activities or voluntarily assumed a position in society where such publicity is to be expected, the private individual has made no such choice and therefore has a more compelling call on the courts for redress (418 US, at p 345).

A line of demarcation is now drawn. On the one side stand public officials and public figures who when seeking to recover for an alleged libel must meet the "actual malice" standard of proof set forth in *New York Times Co. v Sullivan.* On the

2. Prior to its decision in *Gertz,* the Supreme Court had without exception applied the *New York Times* standard to all defamation cases brought before it (see The Supreme Court, 1973 Term, 88 Harv L Rev 43, 141–42).

other side stand private individuals who, even when involved in events of public or general interest, do not have such a strict burden of proof. The private individual may recover upon a showing of negligence or whatever other appropriate standard a State may set to impose liability upon a defendant, so long as it does not permit punitive damages or liability without fault *(Gertz v Robert Welch, Inc., supra,* p 453 [BLACK-MUN, J., concurring]). Thus the constitutional zone of protection for the publisher's error of fact caused by negligence has been removed where there is a determination that the plaintiff is a private individual. An attack on such person's reputation is considered in New York to be a personal injury (General Construction Law, § 37-a), a recovery for which is governed by common-law rules relating to libel.[3]

The critical distinction upon which this case must turn is whether plaintiff is a private person or a public figure. If the former, State tort law standards must be applied, while, if the latter, the "knowing-or-reckless falsity" standard of *New York Times Co. v Sullivan* is applicable. Considering Ms. James' status in this respect, a public figure has been defined under common-law tort rules as: "a person who, by his accomplishments, fame, or mode of living, or by adopting a profession or calling which gives the public a legitimate interest in his doings, and his character, has become a 'public personage'. He is, in other words, a celebrity. Obviously to be included in this category are those who have achieved some degree of reputation by appearing before the public, as in the case of an actor, a professional baseball player, a pugilist, or any other entertainer. The list is, however, broader than this * * * It includes, in short, anyone who has arrived at a position where public attention is focused upon him as a person". (Prosser, Law of Torts [4th ed.], § 118, 823–824.) The appellant, relying upon *Gertz,* contends that she is not a public personality in all aspects of her life and is at most a minor personality in the nightclub world. This argument would have been of greater weight if the news article about which she complains had delved into details of appellant's home life, outside of her professional dancing career at the Encore Club because, as is stated in *Gertz,* "an individual should not be deemed a public personality for all aspects of his life" (418 US, at p 352; see, also, *Spahn v Julian Messner, Inc.,* 18 NY2d 324, 328). Here,

---

3. In New York liability for the negligent use of language is limited while the tort of libel is of far broader scope (34 NY Jur, Libel and Slander, § 2).

however, all the facts contained in the article relate directly to appellant's professional life. Plaintiff is a professional entertainer who has for years earned her living by performing in public. A May, 1972 article in *Summing Up* (a publication of the Monroe County Bar Association) featuring appellant was published several months before the article of which she complains appeared in *Upstate*. It stated that Samantha James and the Encore Club were moving their business location and would be open at 11:00 A.M. featuring luncheon entertainment consisting of "girls, girls and more girls" and sandwiches named after strippers ("those ordering Samantha will get tuna on a roll"), and that Ms. James had recently completed a book called "The Stripper and the Priest", and finally, that article stated that as a result of her exposure in *Summing Up* she would be featured in an upcoming cover story in *Upstate*. Certainly the subject of female entertainers, whether they be "Go-Go Girls", "Topless Dancers" or, as this appellant, strippers or exotic belly dancers, is one that has been a topic of public interest and discussion for years. In becoming a belly dancer and eagerly seeking this interview for the resultant publicity and to advance her professional career, which depends upon public recognition and attention, appellant thrust herself "into the vortex of this public issue" *(Gertz v Robert Welch, Inc., supra,* p 352) and thus falls within the definition of a public figure.

The majority agree that appellant is a public figure. Nowhere does this record contain any factual evidence demonstrating respondent's "actual malice". In fact appellant herself disclaims that respondent is guilty of "actual malice". In response to Interrogatory No. 5 which asked plaintiff to specify whether she claimed respondent published the alleged libelous material with "actual malice", appellant stated: "Plaintiff intends to rely upon malice implied by law in libel actions and *there is no claim made here of actual malice,* other than the malice which speaks for itself" (emphasis supplied). Even had she claimed that there was "actual malice", there is no basis factually demonstrated in the record to support it. "Actual malice", as the Supreme Court has recently stated "is a term of art, created to provide a convenient shorthand expression for the standard of liability that must be established before a State may constitutionally permit public officials to recover for libel in actions brought against publishers. As such, it is quite different from the common-law stan-

dard of 'malice' generally required under state tort law to support an award of punitive damages" *(Cantrell v Forest City Pub. Co.,* 419 US 245, 251–252). Thus actual malice is distinguished from the traditional ill-will of common-law malice. The plaintiff must show by convincingly clear evidence that the respondent newspaper is guilty of actual malice in order to defeat the respondent newspaper's conditional constitutional privilege. The Court of Appeals recently stated that " 'reckless disregard' cannot be fully encompassed in one infallible definition" and "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." The Court of Appeals further held that other tests of reckless disregard in publishing have been found in "a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" or "a high degree of awareness of * * * probable falsity" *(Trails West v Wolff,* 32 NY2d 207, 219, citing *St. Amant v Thompson,* 390 US 727, 730–732 and *Garrison v Louisiana,* 379 US 64, 74).

Appellant claims that the reporter refused to review the interview notes with her and that respondent was negligent in publishing without checking the final copy with her despite her request. It is also her contention that the statements complained of were false, that she never made them and that respondent must have known that she did not make them. Such factual averments, even assuming their truth, fall far short of meeting the required standard of proof. The majority hold that whenever an interviewee claims that the attribution is false a question of fact is thereby created precluding summary judgment and mandating a trial. Where a public figure voluntarily exposes herself to the increased risk of a falsehood, such is not the law and if it is, it will impose an impossible burden upon publishers to verify all direct quotations. A cursory scan of any newspaper quickly reveals that the vast majority of news stories contain quotes from those persons interviewed, because without these factual statements all news items would consist merely of the reporter's conclusions. In view of the huge volume of print and words that pass

through the daily news the majority view in this case imposes what amounts, as a practical matter, to an impossible requirement, one that, if it becomes the rule, will be translated to mean "publish at your peril". Freedom of the press is thus debilitated by a rule appropriate in negligence cases but plainly inappropriate when considering First Amendment guarantees. The proper rule is that a mere finding of negligence in failing to discover misstatements in a publication regarding a public figure, despite the claim that the statement is false, is constitutionally insufficient under the First Amendment to the Constitution of the United States and section 8 of article I of the New York Constitution absent proof of that kind of "extreme departure" characterized as "recklessness" required for a finding of actual malice within the guidelines of *New York Times (New York Times Co. v Sullivan,* 376 US 254, 288, *supra; Trails West v Wolff,* 32 NY2d 207, 219, *supra; Gilberg v Goffi,* 21 AD2d 517, 526; see, also, *Matter of Figari v New York Tel. Co.,* 32 AD2d 434, 446).

It is interesting that plaintiff interprets the questioned statement as meaning that she "was acting as a prostitute who was offering her body." The entire import of the statement is that men are interested in her because of her particular profession. It may well be suggested that this is a truism. To construe the statement as plaintiff does, brings to mind the French motto "honi soit qui mal y pense". If, as plaintiff asserts, the only malice is the "malice which speaks for itself" then in the context of the facts in this record there is none.

Accordingly, we dissent and vote to affirm the order at Special Term.

MOULE, J. P., and DEL VECCHIO, J., concur with SIMONS, J.; CARDAMONE and GOLDMAN, JJ., dissent and vote to affirm the order in an opinion by CARDAMONE, J.

Order reversed with costs and motion denied.

