# THOMAS T. TAGAWA *v.* MAUI PUBLISHING COMPANY, LTD., A HAWAII CORPORATION.

## No. 4524.

APRIL 27, 1967.

RICHARDSON, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

Plaintiff has appealed from a summary judgment granted defendant newspaper publisher under the rule of *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964). On the record the following are undisputed facts:

Plaintiff is a member of the Board of Supervisors of the County of Maui, widely known in the county and elsewhere in the State as a public official. Plaintiff is known as "Tom Tagawa" and also as "Honest Tom."

During the first week of January, 1962, County of Maui employees were observed using county equipment to pave private driveways of two houses owned by Island Finance, Ltd. Plaintiff is the president, and a director and stockholder of Island Finance, Ltd.

On January 13, 1962, defendant published the column which is the basis of this action. As set forth in the complaint it reads:

"Country Chirps . . .
. . . By A Westside Bird

"SUCH A LOVELY RAIN as we have been having this past week end! Such a far cry from the 26-inch deluge in November. I do hope that not only does it cause growth in grass, plants and sugar cane but also in plans for the new bridge across Kahana Stream. This relatively simple little structure should not require hours and hours of engineering and the detour is rough, narrow and either dusty or sloppy with mud! Right now the dirt used to fill up the holes has worked out and one can hardly go over five miles per hour if one expects to have any teeth left.

"A few days ago I saw County road equipment grading and paving the driveways into those two new rental houses at Honokowai. You know, the ones owned by Tom Tagawa's company. For my tax dollar I would much prefer to see the County equipment used

to fix up the rutting detour mentioned in the paragraph above. My own drive does not happen to need paving so I can honestly say I'd rather have the detour fixed up. Of course some of you readers with muddy driveways might prefer to have yours fixed up. All a matter of personal need, I guess.

"The letter from the Citizens Committee for Good Government regarding the astronomical increases in County Government costs was most thought-provoking. It drew a most indignant reply from our Supervisors who blamed all increases on the wage raises forced on the County by the Legislature. In reading the newspaper account I fail to see any mention of the increased cost of paving materials as well. Did you perchance forget that, Honest Tom?"

On January 26, 1962, a libel action was filed by plaintiff with the publisher as the sole defendant. The identity of "A Westside Bird" does not appear. However, defendant makes no contention that its responsibility is any different from that of the writer of the column, and we shall proceed on the assumption that the legal relationship between the writer and defendant is immaterial.

On February 2, 1962 the county billed "Mr. Thomas Tagawa, President of Island Finance Co., Ltd." in the sum of $401.76 for labor, equipment and materials for paving of the driveways. The bill was paid by a check of Island Finance, Ltd. signed by Tom Tagawa. The check was received February 13, 1962, and turned over to the county treasurer.

According to the affidavit of the county engineer, furnished by the plaintiff:

"That it has been and is the custom and practice of his Department and the County of Maui to perform certain minor work upon and within private property upon the request of any private individual, such

as the construction of driveways, excavation work, etc., after the receipt of a deposit based upon the estimated cost of such work, except that no such deposit is, and was in the past, required from a reputable firm or corporation and in such case work is and has been performed upon the understanding that the full cost will be paid upon the receipt of the invoice for same; provided that such work is done by the department only when its equipment and employees necessary therefor are engaged in performing county work in the immediate surrounding area;

"That during the month of January, 1962, two driveways were constructed upon premises situate in Honokowai, Maui, owned by Island Finance, Ltd., a reputable corporation in accordance with such custom and practice."

Plaintiff also furnished the affidavit of the Highway Construction and Maintenance Superintendent, who deposed that the work on the premises of Island Finance, Ltd., was done in accordance with the usual practice, pursuant to an inquiry from Tom Tagawa in November, 1961 as to whether the county would be able to do the work, and that "in connection with such inquiry, Tom Tagawa clearly indicated to the undersigned that Island Finance, Ltd., would pay for the cost of such work * * *."

Before considering the question of malice we turn to the article itself. Plaintiff's complaint characterizes it as intended to assert, and to be understood as asserting, "that such work mentioned in the said article had been performed for said Island Finance, Limited, free of any cost, expense or charge to said Island Finance, Limited, by virtue of the use by the plaintiff of his official position and influence as a member of the said Board of Supervisors." The averments of the complaint are considerably

more lengthy but this is the nub of it. Plaintiff contends that it is the province of the jury to determine whether the words are susceptible of the construction put upon them by plaintiff. Only general damages are claimed.

It is the rule in this jurisdiction that: "If the words, standing alone, are not reasonably susceptible of the meaning which the plaintiff seeks by innuendo to place upon them they cannot be adjudged inherently harmful and therefore actionable per se. The plaintiff cannot by innuendo enlarge the meaning of the words." *Baldwin* v. *Hilo Tribune-Herald, Ltd.,* 30 Haw. 610, 618-19. On the other hand, as further held in the cited case, if the words are reasonably susceptible of the defamatory meaning put upon them by plaintiff no allegation of special damages is necessary. These principles were applied in *Cabrinha* v. *Hilo Tribune-Herald, Ltd.,* 36 Haw. 355.

As to the function of the jury in determining the meaning of the article it was stated in *Baldwin* v. *Hilo Tribune-Herald, Ltd., supra,* 30 Haw. 610, 619:

"* * * If, on the other hand, the words are reasonably susceptible of the defamatory construction placed upon them by the plaintiff the court should so instruct the jury. It would then be the province of the jury to determine whether the words were intended in their defamatory or innocent sense and in which sense they were understood."

*Clark* v. *Pearson,* 248 F. Supp. 188, 192 (D.D.C. 1965) was a denial of a summary judgment. The court said:

"If an accused publication is unambiguous, its construction is a question of law for the Court. If, however, it is capable of two or more meanings, then the issue must be determined by the jury. It becomes the function of the jury to decide what the publication would mean to the ordinary man in the street, i.e., the average reader."

With the foregoing rules in mind we consider the article set out in the complaint in the present case. It is to be noted that, in its decision of October 19, 1962, the trial court agreed with plaintiff's contention as to the innuendo of the article.[1] In support of the innuendo plaintiff argues in this court that read as a whole the article would convey to the ordinary reader that plaintiff had used his official influence to cause the paving of the private driveways free and without any cost to the owner of the property.

That the article must be read as a whole is well settled. *Cabrinha* v. *Hilo Tribune-Herald, Ltd., supra,* 36 Haw. 355, 363. The third paragraph, in which the writer of the article referred to "astronomical increases in County Government costs," must be read with the second paragraph of the article. Suppose the second paragraph be read as sarcasm, as it might be, that is, as saying in effect: "Wouldn't you readers like to have your muddy driveways paved the way Tom Tagawa's company has?" This reading might be taken to support the innuendo that plaintiff used his influence as a member of the Board of Supervisors to get the work done. However, there was more to the article than that. In the third paragraph, there was a pointed reference to plaintiff by the appellation "Honest Tom," holding plaintiff responsible for the silence of the supervisors on the subject of "the increased cost of paving materials" as a contributing factor in the "astronomical increases" in county government costs.[2] Read with the

---

[1] So far as appears the trial judge was of no different view when he reconsidered and granted the summary judgment under the doctrine of *New York Times Co.* v. *Sullivan, supra.* The record is reviewed *infra.*

[2] The mere fact that the remarks that were addressed specifically to plaintiff were framed as a question is not significant. As stated in *Afro-American Publishing Co.* v. *Jaffe,* 366 F.2d 649, 655 (D.C. Cir.):

"* * * Where readers would understand a defamatory meaning liability cannot be avoided merely because the publication is cast in the form of an opinion, belief, insinuation or even question."

second paragraph, the reference in the third paragraph to the increased cost of paving materials, stated to be part of an astronomical overall increase in county costs, might be deemed to imply government handouts of free materials laid at plaintiff's door. The article was reasonably susceptible of the construction put upon it by plaintiff.

Defendant takes the position that it has a right under the First Amendment to have the question of the meaning of this article withdrawn from the jury. The ultimate question is whether the plaintiff will be able to produce enough evidence to "constitutionally support"[3] a libel judgment, and the imputation of the article necessarily is included in that question. *Cf., Clark* v. *Allen,* 415 Pa. 484, 204 A.2d 42, 48; *Gilberg* v. *Goffi,* 21 A.D.2d 517, 251 N.Y.S.2d 823, 829, *aff'd,* 15 N.Y. 1023, 207 N.E.2d 620. However, this does not signify that defendant has a right to have the meaning of the publication withdrawn from the jury whenever it is not clearly defamatory. *Rosenblatt* v. *Baer,* 383 U.S. 75 (1966) illustrates this. *Rosenblatt* went to trial, resulting in a verdict for plaintiff. The Supreme Court reversed because of error in the application of the rule of *New York Times Co.* v. *Sullivan,* which was handed down after the trial in *Rosenblatt.* However, the court remanded for further proceedings on the ground that even under *New York Times* plaintiff might be able to present a jury question. Important to our consideration of the present case is what the court had to say about the article involved in *Rosenblatt.* That article concerned a certain recreation area of which plaintiff was the former supervisor, but which presently was operated under a new regime. The article stated that the area was doing "hundreds of per cent BETTER than last year," and asked: "What happened to all the money last year? and every

---

[3] *New York Times Co.* v. *Sullivan, supra,* 376 U.S. 254, 285.

other year? What magic has Dana Beane [chairman of
the new commission] and rest of commission, and Mr.
Warner [the new supervisor] wrought to make such tre-
mendous difference in net cash results?" The court stated:

> "The column on its face contains no clearly action-
> able statement. Although the question 'What hap-
> pened to all the money last year? and every other
> year?' could be read to imply peculation, they could
> also be read, in context, merely to praise the present
> administration. The only persons mentioned by name
> are officials of the new regime; no reference is made
> to respondent [plaintiff], the three elected commis-
> sioners, or anyone else who had a part in the adminis-
> tration of the Area during respondent's [plaintiff's]
> tenure. Persons familiar with the controversy over
> the Area might well read it as complimenting the luck
> or skill of the new management in attracting increased
> patronage and producing a 'tremendous difference in
> net cash results' despite less favorable snow; indeed,
> witnesses for petitioner [defendant] testified that they
> so read the column.

> "Respondent [plaintiff] offered extrinsic proofs to
> supply a defamatory meaning. These proofs were that
> the column greatly exaggerated any improvement
> under the new regime, and that a large part of the
> community understood it to say that the asserted im-
> provements were not explicable by anything the new
> management had done. Rather, his witnesses testified,
> they read the column as imputing mismanagement and
> peculation during respondent's tenure. * * *" (383
> U.S. at 79.)

If *New York Times Co.* v. *Sullivan* required the dis-
missal of libel suits filed by public officials where the
article in question was not clearly defamatory the court
would have foreclosed retrial of *Rosenblatt,* or would

have made retrial contingent on proof taking the case outside the *New York Times* rule altogether. We conclude that *New York Times* does not call for withdrawal of the case from the jury merely because the article is not clearly defamatory.

*Rosenblatt* originated in New Hampshire. See *Baer* v. *Rosenblatt,* 106 N.H. 26, 203 A.2d 773. It is the rule in New Hampshire that "where words are ambiguous the testimony of hearers or readers thereof as to how they understood them can be received." *Chagnon* v. *Union Leader Corp.,* 103 N.H. 426, 174 A.2d 825, 832. As seen, testimony of this character was adduced in *Rosenblatt.* Whether on a proper showing of the absence of any genuine issue of fact as to actual reader understanding of an allegedly libelous article a summary judgment might be obtained, is a question not before us. See *Baldwin* v. *Hilo Tribune-Herald,* 32 Haw. 87, 101-02, where the court noted a conflict of judicial opinion on the necessity of evidence as to actual reader understanding; and see 1 Harper & James, *Torts,* § 5.4; 3 Restatement, *Torts,* § 563c. At least on the present record there is no basis for withdrawal of the case from the jury on the ground that the publication could not be considered defamatory. We proceed to consideration of the issue of malice.

Since the rule of *New York Times Co.* v. *Sullivan, supra,* is applicable in this case, the issue of malice depends upon whether the column was published "with knowledge that it was false or with reckless disregard of whether it was false or not." (376 U.S. at 280.) True, under *New York Times* plaintiff has the burden at trial of piercing defendant's First Amendment[4] protection by showing knowledge of falsity or reckless disregard of the

---

[4] The First Amendment is applicable by virtue of the due process clause of the Fourteenth Amendment. *New York Times Co.* v. *Sullivan, supra,* 376 U.S. at 285.

truth. The burden of proof imposed by *New York Times* undoubtedly is a heavy burden. But on a motion for summary judgment the movant, here the defendant, has the burden of marshaling a record showing that if the case went to trial there would be no issue for the jury. *Mossman* v. *Hawaiian Trust Co.*, 45 Haw. 1, 9-10, 361 P.2d 374; *State* v. *Midkiff*, 49 Haw. 456, 421 P.2d 550. Defendant has made no showing as to the facts in its possession at the time of publication of the column, although it is of course self-evident that defendant knew about the work done on the Island Finance premises.

The summary judgment was granted on May 10, 1965. Subsequently the below noted courts of appeals decisions were rendered, bearing on the right to a summary judgment. The most recent is *Walker* v. *Courier Journal*, 368 F.2d 189 (6th Cir., October 28, 1966). In that case the district court had dismissed the libel action under *New York Times Co.* v. *Sullivan, supra,* holding that: "The reliance upon or republications by defendants of the reports of national news gathering agencies as here occurred is, in this court's opinion, insufficient to establish a 'reckless' disregard of the facts, or knowledge of falsity, now *Constitutionally necessary* to support an action for libel of the kind stated herein." The court said further: "* * * I can conceive of no basis for a finding of actual malice in the reliance upon and republication of news reports supplied here by reputable news gathering agencies. * * *." (246 F. Supp. 231, 235.) Reversing, the court of appeals held:

"* * * We agree with the District Court as to the applicability of New York Times. Applying the doctrine of New York Times, however, we disagree with the District Court in not giving an opportunity to Appellant to offer evidence to show malice." (368 F.2d at 190.)

"Unlike New York Times Co. v. Sullivan, *supra*, [376 U.S. 254], and Pauling v. Globe-Democrat Publishing Company, *supra* [362 F.2d 188], Appellant was prevented from adducing proofs which could present a jury question on the issue of malice. Whether there was malice was a fact question placed in issue by the complaint,[5] and *no affidavits or depositions were filed which may have removed this issue from the case."* (368 F.2d at 191, emphasis added.)

By way of comparison, we note that in *Washington Post Co.* v. *Keogh,* 365 F.2d 965, 969 (D.C. Cir., July 28, 1966) the newspaper "filed depositions of three employees and affidavits by its editor and an assistant managing editor indicating that before publication each of the Post personnel deposing had read one or both of the columns and had no reason to believe or evidence causing them to suspect the information contained in them was false," as stated by the court in reversing a denial of summary judgment. On the present record, *Washington Post Co.* v. *Keogh* does not support defendant.

In *Pape* v. *Time, Inc.,* 354 F.2d 558 (7th Cir., December 28, 1965) the complaint was based on an article which purported to condense a certain report of the United States Commission on Civil Rights. The article stated that the report found that plaintiff had committed acts of police brutality against one Monroe. In fact, the official report merely said that these acts were allegations in a civil complaint filed by Monroe. In an earlier opinion the court of appeals had reversed a dismissal of the complaint, holding that it stated a claim for relief. (318 F.2d 652.) Subsequently *New York Times* was decided, and

[5] It is to be noted that in respect of the allegations of the complaint in the cited case the court stated merely that it "alleged that the defendants * * * falsely and maliciously reported that Appellant participated in riots * * *." (368 F.2d at 190.)

The complaint filed in the present case is considered *infra.*

the district court granted a defense motion for summary judgment. The court of appeals again reversed, holding that there was an issue of actual malice for the jury, since defendant's writers must have known that the statements as to plaintiff's conduct were only allegations in a complaint in a civil suit. It particularly is to be noted that as appears from the earlier opinion (318 F.2d at 656) the civil suit had been tried resulting in a verdict and judgment for Monroe, the victim of the alleged police brutality.

In *Pape* the knowledge possessed by defendant appeared from the article itself. In *Washington Post Co.,* defendant filed depositions and affidavits to cover the question of knowledge of falsity or reckless disregard of the truth. In the third case, *Walter* v. *Courier-Journal, supra,* 368 F.2d 189, no affidavits or depositions were filed to remove that question from the case. We conclude that *Walker* is controlling here. As stated in 6 Moore, *Federal Practice,* § 56.16 (2d ed.), the record before the court must be adequate for decision of the legal issue presented by the motion for summary judgment. *Cf., Demandre* v. *Liberty Mut. Ins. Co.,* 264 F.2d 70, 73 (5th Cir.). We find this record inadequate for us to determine whether or not plaintiff could present a jury question on the issue of malice under *New York Times.*

We do not find valid defendant's contention that the complaint on file is insufficient to present an issue of malice under *New York Times.* That case requires a showing of "actual malice," but it does not require any particular form of pleading. The complaint on file contains more than a pro forma allegation of malice,[6] and under the circumstances we deem the complaint sufficient though it is not specific in terms of the knowledge of

---

[6] It is alleged, *inter alia,* that defendant published the article "viciously, wickedly and maliciously" and "with the intent wickedly, viciously and maliciously to injure said plaintiff * * *."

falsity or reckless disregard of the truth required by *New York Times. Cf., Walker* v. *Courier-Journal, supra,* 368 F.2d 189 (6th Cir.) ; *Walker* v. *Kansas City Star Co.,* 406 S.W.2d 44, 56 (Mo.) ; *Walker* v. *Associated Press,* ——— Colo. ———, 417 P.2d 486, 490; *Wells* v. *Morton,* 388 S.W.2d 607, 610 (Ky.) ; *Cabin* v. *Community Newspapers, Inc.,* 50 Misc. 2d 574, 270 N.Y.S.2d 913, 917; H.R.C.P., Rule 9(b). *But see Lundstrom* v. *Winnebago Newspapers, Inc.,* 58 Ill. App. 2d 33, 206 N.E.2d 525, 527.

The form of the complaint could not be dispositive of this case in any event. At this point it is necessary to review the record. In the court below defendant made alternate motions, that is, to dismiss because of failure of the complaint to state a claim upon which relief can be granted (H.R.C.P., Rule 12(b)(6)), or in the alternative for summary judgment (H.R.C.P., Rule 56(b)). On October 25, 1962, the court denied both motions. After reconsideration under *New York Times* the court, on May 10, 1965, granted the motion for summary judgment. The court's earlier ruling that the complaint was sufficient on its face was not set aside. Thus, as the case comes before the court, the ruling sustaining the sufficiency of the complaint on its face stands. In that situation were we to rule that the complaint is insufficient we would grant leave to amend.[7] However, we do not find an amendment necessary here.[8] But as set out below, the circumstances

---

[7] See 3 Moore, *Federal Practice,* § 15.11 at 970 (2d ed.).

[8] It is to be noted that we make no holding that the complaint in this case would suffice if the action had been filed after *New York Times.* Compare *Pauling* v. *Globe-Democrat Publishing Co.,* 362 F.2d at 192, 198 (8th Cir., *petition for cert. pending,* No. 522, October Term 1966), where the court considered the sufficiency of the evidence and affirmed the verdict for defendant on the ground that the jury had resolved the factual issue in defendant's favor, but did not go on the ground of a failure to plead a claim for relief under the standards enunciated by *New York Times* after the complaint was filed. The court stated: "The complaint did refer to malice, although perhaps only in the pre-New York Times and state law sense."

have been taken into consideration in connection with the form of the remand.

Reversed and remanded for entry of an order vacating the judgment and denying defendant's alternate motions. Taking into consideration the circumstances, we direct that the denial of the summary judgment be without prejudice to renewal of the motion for summary judgment on the making of an additional showing. 6 Moore, *Federal Practice,* §§ 56.14(2) at 2259; 56.15(6) at 2422-23; 56.27(3) at 2980 (2d ed.).

*James H. Lack* (*Meyer M. Ueoka* on the briefs) for plaintiff-appellant.

*J. Garner Anthony* (*John H. R. Plews* with him on the briefs, *Robertson, Castle & Anthony* of counsel) for defendant-appellee.