THOMAS T. TAGAWA *v.* MAUI
PUBLISHING COMPANY, LTD.

No. 4689

December 3, 1968.

RICHARDSON, C.J., MARUMOTO, ABE AND
LEVINSON, JJ. AND CIRCUIT JUDGE FELIX
ASSIGNED BY REASON OF VACANCY.

Opinion of the Court by Richardson, C.J.

This is an appeal by plaintiff, a public official, from an order granting summary judgment to defendant newspaper publisher on the basis that there was no genuine issue as to "actual malice" as required by *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964).

The facts that gave rise to this action are detailed in our previous decision involving these same two parties, *Tagawa v. Maui*

*Publishing Co.,* 49 Haw. 675 (1967). In short, defendant published a column on January 13, 1962, in which it was stated that a Maui News columnist had seen road equipment owned by the county government paving driveways to two rental homes owned by plantiff's finance company. Plaintiff, at that time a member of the Maui County Board of Supervisors, was known as "Tom Tagawa" and used the campaign slogan "Honest Tom". The column, in its conclusion, noted that the Board of Supervisors had recently attributed an increase in county government costs to wage increases for county workers, but not to "the increased cost of paving materials * * * ." "Did you perchance forget that, Honest Tom?" the column asked.[1]

Plaintiff filed a libel action against the publisher as sole defendant[2] on January 26, 1962, alleging, inter alia, that the column conveyed to readers the impression that plaintiff had dishonestly used his official position for personal gain. Plaintiff furnished an

---

[1]The entire column read as follows:
"Country Chirps . . .
. . . By a Westside Bird

"Such a lovely rain as we have been having this past week end! Such a far cry from the 26-inch deluge in November. I do hope that not only does it cause growth in grass, plants and sugar cane but also in plans for the new bridge across Kahana Stream. This relatively simple little structure should not require hours and hours of engineering and the detour is rough, narrow and either dusty or sloppy with mud! Right now the dirt used to fill up the holes has worked out and one can hardly go over five miles per hour if one expects to have any teeth left.

"A few days ago I saw County road equipment grading and paving the driveways into those two new rental houses at Honokawai. You know, the ones owned by Tom Tagawa's company. For my tax dollar I would much prefer to see the County equipment used to fix up the rutting detour mentioned in the paragraph above. My own drive does not happen to need paving so I can honestly say I'd rather have the detour fixed up. Of course some of you readers with muddy driveways might prefer to have yours fixed up. All a matter of personal need, I guess.

"The letter from the Citizens Committee for Good Government regarding the astronomical increases in County Government costs was most thought-provoking. It drew a most indignant reply from our Supervisors who blamed all increases on the wage raises forced on the County by the Legislature. In reading the newspaper account I fail to see any mention of the increased cost of paving materials as well. Did you perchance forget that, Honest Tom?"

[2]As we noted in the prior *Tagawa* decision, *supra* at 677, "[D]efendant makes no contention that its responsibility is any different from that of the writer of the column, and we shall proceed on the assumption that the legal relationship between the writer and defendant is immaterial."

affidavit from the county engineer stating that it was standard practice for the county to perform minor work on private driveways when county equipment was being used in the immediate area. Only an oral agreement that payment would be forthcoming was required of reputable persons. Plaintiff also furnished an affidavit indicating that he had made such an agreement in November 1961. Payment for the county's services was rendered on February 13, 1962.

The trial court, on October 19, 1962, denied defendant's motion to dismiss for failure to state a cause of action and an alternative motion for summary judgment. The court ruled that there was a genuine issue of fact as to whether there was "malice".[3]

On March 9, 1964, the U. S. Supreme Court rendered its decision in *New York Times Co. v. Sullivan, supra*. Defendant, therefore, filed a motion to reconsider the motions to dismiss and for summary judgment on the ground that, according to *New York Times,* the Maui News column was protected by the First Amendment guarantees of freeedom of speech and of the press as applied to the States by the Fourteenth Amendment. The *Times* case held that these constitutional guarantees prohibit a public official from recovering damages for defamatory falsehood relating to his official conduct "unless he proves that the statement was made with 'actual malice'—that is, with the knowledge that it was false or with reckless disregard of whether it was false or not." 376 U. S. 254, 279-80.

The trial court granted the motion for summary judgment under the *Times* rule. We reversed and remanded without prejudice to the renewal of the motion for summary judgment on the making of an additional showing by defendant that there was no "actual malice". *Tagawa* v. *Maui Publishing Co., supra* at 688. We ruled that, while plaintiff has the burden at trial of piercing defendant's First Amendment protection by showing knowledge of falsity or reckless disregard of the truth, on a motion for summary judgment the movant, here the defendant,

---

[3]The court also ruled that there were two other issues of fact: whether the matter presented in the column was false, and whether the article could be understood by the average reader as conveying the meaning ascribed to it by plaintiff.

has the burden of marshaling a record showing that if the case went to trial there would be no issue for the jury. *Id.* at 683-84.

Depositions were then taken of John McConkey, the columnist, and Earl Tanaka, the news editor, who edited the column immediately prior to publication. The gist of McConkey's deposition was that he personally saw the work being done on the driveways and that on or prior to the publication of the column he had no knowledge of plaintiff's arrangement to pay for the improvement. He admitted that he assumed the work was not being paid for and that he made no investigation to find out if any arrangement for payment had been made. McConkey also filed an affidavit stating that the column was written in good faith and that prior to publication he had no knowledge that any of the facts included in the column were false. Tanaka filed an affidavit to the same effect. In his deposition, Tanaka stated that he read the column but did not check with county officials to determine whether plaintiff had agreed to pay.

Plaintiff filed an affidavit in which he stated that there was an editorial published on the same day as the column calling him "tender-skinned" and that, on a previous occasion, in October 1961, the editor of the Maui News had told him, "You are trying to be too big for your size * * *. You know I can blast you."

The trial court found from these additions to the record that there would be no genuine issue as to "actual malice" if the case went to trial, and summary judgment was granted to defendant. Plaintiff appeals from that judgment. The question before us is whether the depositions and affidavits presented are sufficient to remove the issue of "actual malice" from this case.

When *Tagawa* first came to us, we examined *New York Times* and a string of subsequent cases refining the *Times* test of "actual malice". We found, under *Walker* v. *Courier Journal,* 368 F.2d 189, 191 (6th Cir. 1966), that the persons claiming injury must not be prevented from adducing proof which could present a jury question on the issue of "actual malice", where no affidavits or depositions were filed which may have removed this issue from the case. By contrast, we noted, under *Washington Post Co.* v. *Keogh,* 365 F.2d 965, 969 (D.C. Cir. 1966), *cert. denied,* 385

U.S. 1011 (1967), that summary judgment for the newspaper-defendant was granted when the newspaper "filed depositions of three employees and affidavits by its editor and an assistant managing editor indicating that before publication each of the *Post* personnel deposing had read * * * the columns [that were the basis of the libel action] and had no reason to believe or evidence causing them to suspect the information contained in them was false." We stated that on the record of the *Tagawa* case at that time *Washington Post* did not apply.

We now hold that where plaintiff is a public official and defendant is a newspaper publisher which published an allegedly defamatory column about plaintiff's official conduct, summary judgment for defendant may be granted where defendant shows through uncontroverted depositions and affidavits that the publication was made without deliberate falsification and without a high degree of awareness of the probable falsity of the statements in the publication; in such instance, there is no genuine issue of "actual malice" for trial.

"Actual malice" has become a term of art clearly distinguishable from the ordinary definition of "malice" in terms of ill will, a basis for the trial court's original denial of defendant's motion for summary judgment. "Actual malice" consists of "deliberate falsification" of facts or "reckless disregard" of the truth, *i.e.*, reckless publication despite a high degree of awareness, harbored by the publisher, of the probable falsity of the published statements. *New York Times Co.* v. *Sullivan, supra* at 279-80; *Garrison* v. *Louisiana,* 379 U.S. 64, 74 (1964) ; *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130, 153 (1967). An investigatory failure alone on the part of the publisher, without a high degree of awareness of probable falsity may raise the issue of negligence but not the issue of "actual malice".[4] *New York Times Co.* v. *Sullivan, supra* at 287-88; *Washington Post Co.* v. *Keogh, supra* at 966-67, n.1;

---

[4] This type of investigatory failure, where the publisher does not harbor a high degree of awareness of the probable falsity of a statement, is obviously different from the investigatory failure that is involved when a publisher takes an anonymous telephone call and publishes a statement relying entirely on the call. In this latter case, the publisher is deemed to be well aware of the probability of falsity. See the discussion of publication based on an anonymous call in *St. Amant* v. *Thompson,* 88 S.Ct. 1323 (1968), *infra* at 13.

*Curtis Publishing Co.* v. *Butts, supra* at 153-54; *Beckley Newspapers Corp.* v. *Hanks,* 389 U.S. 81, 83-85 (1967). In other words, mere negligence is not "actual malice".

In *Times* itself, the Supreme Court stated that a failure on the part of the newspaper to check facts in the publication, an advertisement, against stories in its own files and through phone calls to alleged sponsors of the advertisement may have been enough to give rise to an issue of fact on negligence, but that failure was not enough to give rise to an issue of fact on "actual malice". The investigatory failure was considered a constitutionally impermissible basis for a libel action by a public official where the *Times* personnel involved had filed affidavits and offered testimony disclaiming any knowledge of falsity in the advertisement. *New York Times Co.* v. *Sullivan, supra* at 260-61, 285-86; *see also, Washington Post Co.* v. *Keogh, supra* at 966-67, n.1. Similarly, in the *Post* case where a nationally syndicated column by Drew Pearson allegedly defamed a Congressman, the affidavits and depositions by the publisher's employees and editors disclaiming knowledge of alleged falsity in the charges in the column were sufficient to support the summary judgment.

The Supreme Court acknowledged in *St. Amant* v. *Thompson,* 88 S.Ct. 1323 at 1326 (1968), that the "reckless disregard" test, synonymous of course with the "actual malice" test, may be open to the charge that it "puts a premium on ignorance, encourages the irresponsible publisher not to inquire, and permits the issue to be determined by the defendant's testimony that he published the statement in good faith and unaware of its probable falsity." However, the court explicitly rejected a proposed alternative that publishers meet the standard of a reasonable man or a prudent publisher. A standard of reasonableness or prudence would not adequately implement the First Amendment freedoms of speech and of the press, since it would lead to "self-censorship" by publishers in matters concerning public business and the conduct of public officials. The Court concluded, "To insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones." *Id.* at 1326.

In the case at hand, the uncontroverted depositions and affidavits of McConkey and Tanaka are sufficient to show that "actual malice," as defined by *Times* and its progeny, is not genuinely at issue. McConkey, who had been a regular Maui News columnist on a free-lance basis for about 12 years, observed the county equipment at work on plaintiff's property and assumed that plaintiff was not paying for the work. Without checking with the county officials, McConkey wrote a column implying that increased county costs might be attributed to "increased paving costs." The column was then edited by Tanaka, who did not verify McConkey's statements but passed the column along for publication. Unbeknownst to McConkey and Tanaka, plaintiff, as a reputable person in the community, had already contracted with the county officials to have the work done.

Plaintiff argues that a simple telephone call by McConkey or Tanaka to the officials would have uncovered this fact, but the rule as seen above, is that a mere investigatory failure is not sufficient to meet the standard of "actual malice."

Through his last affidavit, plaintiff tries to show that there was a coupling of the investigative failure with a high degree of awareness of the probable falsity of the statements in the column. He contends that the column, along with the editorial, was a part of a malicious attack by the Maui News on his character. However, this contention goes to the issue of "malice" in the sense of ill will, not "actual malice." An editorial arising from "bad or corrupt motive" or from "personal spite, ill will or desire to injure the plaintiff" does not, ipso facto, meet the "actual malice" standard. *Beckley Newspapers Corp.* v. *Hanks, supra* at 82. More importantly, there is no evidence in the record that the Maui News deliberately falsified the column or that it published the column while harboring a high degree of awareness as to the probable falsity of the statements contained therein.

At the same time, the U. S. Supreme Court has not said, as defendant here maintains in its brief: "Even if defendant was gunning for plaintiff, the First Amendment makes him fair game." As Mr. Justice Fortas, speaking figuratively in *St. Amant* v. *Thompson, supra* at 1327, stated: "The First Amendment does

not require that we license shotgun attacks on public officials in virtually unlimited open-season. The occupation of public office-holder does not forfeit one's membership in the human race."[5]

The Court, in the same case, set out express limitations of the "actual malice" test. It held that the defendant in a defamation action brought by a public official cannot automatically insure a favorable verdict solely by professions of good faith and a belief in the truth of the statements published, where there are obvious reasons to doubt the veracity or accuracy of the statements. *Id.* at 1326.

> Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. *Id.* at 1326.

If a column by a writer like McConkey had been purely a figment of his imagination, then the issue of "actual malice" would have arisen, summary judgment for defendant would have been denied and the case would have been tried. Also, if the columnist had called the county officials and had been told that the work would be paid for, but had gone ahead and published the article, then "actual malice" would have been an issue. However, the record indicates that these developments did not take place.

It is unfortunate that the column may have caused damage to the reputation of a public official and that he may have had to spend hours explaining his version of the road-paving to his constituents, especially without the advantage of a mass media form of communication like a newspaper. But the law is clear on the point that "actual malice" requires much more than mere malice in terms of ill will. Since there was no genuine issue regarding

---

[5]This quotation is from Mr. Justice Fortas' lone dissent in the *St. Amant* case. He did not question the validity of the *Times* rule itself, but dissented from the majority on the issue of applying the "actual malice" test to the particular facts of the *St. Amant* case, which facts he felt showed "reckless disregard."

"actual malice," we are compelled to conclude that the summary judgment was rightfully given.

Judgment affirmed.

*John T. Vail and Meyer M. Ueoka* for plaintiff-apellant.
*J. Garner Anthony and John H. R. Plews (Robertson, Castle & Anthony* of counsel) for defendant-appellee.

DISSENTING OPINION OF ABE, J., WITH WHOM FELIX, J. JOINS.

I believe that the trial court erred when it granted summary judgment to the defendant and held that there was no genuine issue as to "actual malice."

Under the record of this case, I do not believe that the majority of this court can say that the issue of actual malice should not have gone to the jury. In an affidavit, plaintiff Tagawa pointed out that the defendant Maui Publishing Company, Ltd., printed an editorial calling plaintiff "tender-skinned" and that, on a previous occasion, in October 1961, the editor of the Maui News had told Tagawa ". . . you are trying to be too big for your size. You know I can blast you." The foregoing establishes an inference that Ezra Crane, editor of the Maui News harbored ill feelings and malice toward plaintiff. This inference gives rise to another inference that John McConkey, Maui News columnist, to carry out this threat deliberately falsified the facts or with reckless disregard of facts, wrote and had the article in question published. The fact that adequate investigation was not made as to the ascertainment of the true facts is an element to which a jury would have given consideration to determine the issue of "actual malice."

It was held in *Tagawa* v. *Maui Publishing Co.*, 49 Haw. 675, 427 P.2d 79 (1967) that *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964) is applicable in this case. *New York Times Co.* v. *Sullivan, supra* held that the First Amendment guarantees of freedom of speech and of the press as applied to the states by the Fourteenth Amendment prohibited "a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

It is conceded that investigatory failure *alone* may raise the issue of negligence but not the issue of actual malice. However, under the record of this case, it can not be said that investigatory failure was the sole issue before the trial court.

Therefore, under the *New York Times* test for actual malice, this case presents a clear issue as to actual malice. The depositions and affidavits of McConkey, Tanaka, and plaintiff Tagawa show that actual malice is genuinely at issue. The court should not

have summarily determined from these self-serving affidavits in the light of Tagawa's affidavit that the article was published in good faith and not with malice.

It should be noted that the affidavits in question would not have been admissible in evidence. Then, if both McConkey and Tanaka were to testify and if the trial court had permitted them to testify as stated in the affidavits, it would have been for the jury to decide whether any, and if any what weight is to be given their testimony.

As stated by the U.S. Supreme Court in *Aetna Life Insurance Co.* v. *Ward*, 140 U.S. 76, 88 (1891):

"The jury were the judges of the credibility of the witnesses .... and in weighing their testimony had the right to determine how much dependence was to be placed upon it. There are many things sometimes in the conduct of a witness upon the stand, and sometimes in the mode in which his answers are drawn from him through the questioning of counsel, by which a jury are to be guided in determining the weight and credibility of his testimony. That part of every case, such as the one at bar, belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men. . . ."

The issue before the court is whether there was actual malice and this issue involves a subjective state of mind. I believe that where the issue involves a subjective state of mind, the trial court should not decide this question on a motion for summary judgment based on self-serving affidavits.

In *Washington Post Co.* v. *Keogh*, 365 F.2d 965 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967) the court at page 967 said:

"A motion for summary judgment should be granted where it is shown that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. In deciding whether a genuine issue of fact is raised in any case, a number of general considerations are relevant. First, the right to trial by jury is at stake, so courts must be ever

careful to grant summary judgment only when no issue of fact is controverted or turns upon a choice between permissible inferences from undisputed evidence. [Citations omitted] This need for care has given rise to the valid generalizations that summary judgment must be denied when there is 'doubt' whether an issue of fact has been raised, and that summary judgment is not usually appropriate when the issue raised concerns a subjective state of mind."

In *Goldwater* v. *Ginzburg*, 261 F. Supp. 784 (S.D.N.Y. 1966), at 78 the court said:

"The issue of actual malice on the part of defendants seems peculiary inappropriate for disposition by summary judgment because it concerns 'motive, intent, and subjective feelings and reactions. [Citations omitted] The Supreme Court has cautioned against summary judgment 'where motive and intent play leading roles'. *Poller* v. *Columbia Broadcasting Co.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962)."

Further, I believe that Tagawa's affidavit raises an inference that the article in question was published with actual malice and therefore the trial court erred in granting summary judgment for defendant.

The U.S. Supreme Court in *Sartor* v. *Arkansas Gas Corp.*, 321 U.S. 620 (1944), in holding that the trial court erred in granting summary judgment under Rule 56 of the Rules of Civil Procedure solely upon opinion affidavits of experts said at pages 628-629:

"We think the defendant failed to show that it is entitled to judgment as matter of law. In the stipulation, the bulletin, the affidavit of the plaintiffs' attorney and the admission of its witnesses, there is some, although far from conclusive, evidence of a market price or a value, under the rules laid down by the Court of Appeals, that supports plaintiffs' case. It may well be that the weight of the evidence would be found on a trial to be with defendant. But it may not withdraw these witnesses from cross-examination, the best method yet devised for testing trustworthiness of testimony. And their credibility and the weight to be given to their opinions is to be determined, after trial, in the regular manner."

*St. Amant* v. *Thompson*, 390 U.S. 727, 88 S. Ct. 1323 (1968), cited in the majority decision I believe also supports this position, as the court said at page 1326:

> "The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."

The majority decision in this case at page 11 reads to wit:

> "If a column by a writer like McConkey had been purely a figment of his imagination, then the issue of 'actual malice' would have arisen, summary judgment for defendant would have been denied and the case would have been tried. Also, if the columnist had called the county official and had been told that the work would be paid for, but had gone ahead and published the article, then 'actual malice' would have been an issue. However, the record indicates that these developments did not take place."

Now, how can the record of the case where there was no trial establish or indicate "these developments"? How can the majority court hold those facts would not or could not have been brought forward at the trial? Weren't these facts to be proven at the trial? Plaintiff not having been given an opportunity to prove his case, is the majority court correct in stating that as the facts showing "actual malice" were not indicated on the record the trial court did not err in granting summary judgment to the defendant?

The majority court, I believe, in its zealousness to protect one's constitutional right of freedom of the press guaranteed by the

United States and Hawaii Constitutions is trampling upon another constitutional right to a trial by jury also guaranteed by both constitutions.

This court in *Abraham* v. *Onorato Garages,* 50 Haw. 628, 446 P.2d 821 (1968), at page 631 stated:

> "In considering the validity of the granting of summary judgment under H.R.C.P. Rule 56 (c), the appellate court must determine whether any genuine issue as to a material fact was raised and whether the moving party was entitled to judgment as a matter of law. *Richards* v. *Midkiff,* 48 Haw. 32, 39, 396 P.2d 49, 54 (1964). The inferences drawn from the underlying facts alleged in the materials (affidavits, testimony, exhibits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion. *United States* v. *Diebold, Inc.,* 369 U.S. 654, 655 (1962)."

Here the defendant Maui News Publishing Co. is the moving party and I believe viewing the record, the affidavits and depositions in the light most favorable to the plaintiff, there is a genuine issue as to actual malice and the plaintiff is entitled to a trial by jury on that issue.

The summary judgment in favor of defendant precludes plaintiff from presenting his case to the jury on the issue of actual malice thereby not only denying plaintiff his day in court, but also his right to a trial by jury.

I would reverse.