WILLIAM E. FERNANDES, Plaintiff-Appellant, *v.* JAN TENBRUGGENCATE and the HONOLULU ADVERTISER, Defendants-Appellees

NO. 8050

(CIVIL NO. 2027)

AUGUST 26, 1982

RICHARDSON, C.J., LUM, NAKAMURA, PADGETT AND HAYASHI, JJ.

*Per Curiam.* Plaintiff-appellant, Councilman William Fernandes (hereinafter cited as appellant), appeals the trial court's grant of summary judgment in favor of defendants-appellees, Jan Tenbruggencate and the Honolulu Advertiser (hereinafter cited as appellees or Tenbruggencate and Advertiser respectively), in a defamation action. For reasons set forth below, we affirm.

## I.

Appellant initiated this action in response to a series of articles published by the Advertiser which allegedly injured appellant's

reputation for honesty and integrity, subjecting appellant to the criticism, scorn, and mistrust of his neighbors, colleagues, and business acquaintances. While appellant initially alleged that the series of articles published by the Advertiser were defamatory, it becomes clear from the record that the only article at issue is one entitled "Brother Helps in Kauai Rezoning Request," written by Tenbruggencate.

The article reports on appellant's signing of a resolution seeking the rezoning of land owned in part by appellant's brother; it alludes to a possible conflict of interest problem but concludes that appellant was not in conflict when he signed the resolution.

In its closing paragraphs, reference is made to a previous situation involving appellant and the Kauai County's Board of Ethics. The article states that "[t]he County's Board of Ethics *initially* called [the previous case] a conflict of interest but after Fernandes appealed, the board reversed its opinion, saying it had been mistaken." (Emphasis added.) In actuality, appellant had written to the board inquiring if he could vote on the matter without violating the county's ethics regulations; the board responded in the affirmative. Later, additional facts concerning appellant's request were brought to the board's attention. At that point, the board stated that had it known of the additional facts, it would have concluded that appellant could not vote on the matter without being in conflict; however, appellant was justified in relying on its previous ruling. Subsequently, the board again reversed itself upon realizing it had misinterpreted the applicable regulations.

## II.

Appellant contends that the trial court erred in granting appellees' motion for summary judgment when he had established a *prima facie* case of defamation by showing that the article defamatorily and falsely implied that appellant acted unethically and that the article was published with knowledge of its falsity or with reckless disregard as to whether it was true or false.

Summary judgments is properly granted where it is established from the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law. *Gealon v. Keala,* 60 Haw. 513, 591 P.2d 621 (1979); *Technicolor v. Traeger,* 57 Haw. 113, 551 P.2d 163 (1976); *Gum v. Nakamura,* 57 Haw. 39, 549 P.2d 471 (1976); *Aku v. Lewis,* 52 Haw. 366, 477 P.2d 162 (1970); *Ottensmeyer v. Baskin,* 2 Haw. App. 86, 625 P.2d 1069 (1981). The standard to be applied by this court in reviewing the validity of a grant of summary judgment is identical to that employed by the trial court. *Technicolor, supra,* at 118, 551 P.2d at 168. This means that "the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion." *Gum, supra,* at 42, 549 P.2d at 474.

In the instant case, summary judgment would have been properly granted if the court found that the communication was incapable of bearing the defamatory meaning ascribed to it by the appellant as a matter of law.[1] A communication is defamatory when it tends to "harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." RESTATEMENT (SECOND) OF TORTS § 559 (1976); *Kahanamoku v. Advertiser,* 25 Haw. 701 (1920). Whether a communication is defamatory " 'depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place.' " *Schermerhorn v. Rosenberg,* 73 A.D.2d 276, ___; 426 N.Y.S.2d 274, 282 (1980). *Kahanamoku, supra.*

Alternatively, summary judgment would be proper where, although the communication is susceptible to a defamatory inter-

---

[1] The initial inquiry in defamation cases is whether as a matter of law, "the communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed is defamatory in character." RESTATEMENT (SECOND) OF TORTS § 614. Comment (b) (1976); *Cahill v. Hawaiian Paradise Park Co.,* 56 Haw. 522, 543 P.2d 1356 (1975); *Tagawa v. Maui Publishing Co.,* 49 Haw. 675, 427 P.2d 79 (1975); *Baldwin v. Hilo-Tribune Herald,* 32 Haw. 87 (1931):

Where the court finds that the statements are not susceptible to the meaning ascribed to it by plaintiff, the case should not be sent to the jury. RESTATEMENT (SECOND) OF TORTS § 614, Comment (b); *Kernick v. Dardanell Press,* 428 Pa. 288, 236 A.2d 191 (1967).

pretation, the moving party showed "through uncontroverted depositions and affidavits that the publication was made without deliberate falsification and without a high degree of awareness of the probable falsity of the statements in the publication; in such instance, there is no genuine issue of 'actual malice' for trial." *Tagawa v. Maui Publishing Co.*, 50 Haw. 648, 652, 448 P.2d 337, 340 (1968).

We believe that summary judgment was properly granted because the article is not defamatory as a matter of law, and, thus, we need not reach the issue of actual malice. *Clark v. Allen,* 415 Pa. 484, 204 A.2d 42 (1964).

Appellant asserts that the article entitled "Brother Helps in Kauai Rezoning Request" is defamatory because the headline implies that appellant improperly used his influence for family aggrandizement and the statement that the Board of Ethics initially found appellant in conflict when he voted in a previous matter falsely accused appellant of violating the county's ethics regulations. Appellant argues that the implication that he acted unethically in promoting rezoning which could benefit his family was especially damaging to his reputation because:

> [i]n recent years Kauai has experienced unlawful, even violent protests and demonstrations against rezoning to allow urbanization and further development. Highly publicized news articles and political speeches have fostered the attitude that politicians who support such legislation are corrupt influence peddlers, traitors on the take from any land owner who is the highest bidder. This attitude is becoming increasingly irrational, often surfacing in the form of racial hatred of all outsiders and anything new or different.

Opening Brief for Appellant at 8-9.

As to the headline, appellant, relying on *Sprouse v. Clay Communications, Inc.*, ___ W.Va. ___, 211 S.E.2d 674 (1974), *cert. denied,* 423 U.S. 882 (1975), contends that it is actionable although the article itself may not be. However, *Sprouse* does not stand for the proposition that a headline should always be examined separately, without regard to the mitigating material in the body of the attached article in determining whether it is defamatory. While the court did consider the headlines separately in determining whether defamatory falsehoods were published, it repeatedly cautioned that it did so only because "the plaintiff proved that the newspaper abdicated its tradi-

tional role of fairly reporting the news and became a participant in a scheme or plan, the object of which was to employ grossly exaggerated and patently untrue assertions, embodied primarily in headlines, to destroy the character of [the plaintiff]." *Id.* at 691. It further stated that "[g]enerally where the headline is of normal size and does not lead to the conclusion *totally* unsupported in the body of the story, *both headlines and story should be considered together for their total impression.*" *Id.* at ___; 211 S.E.2d at 686. (Emphasis added.)

While this court recognizes that there are jurisdictions in which a newspaper headline alone may be actionable,[2] the majority of jurisdictions support the rule that headlines are generally to be construed in conjunction with their accompanying articles.[3] This court previously stated the rule that:

" 'the law does not dwell on isolated passages, but judges of the publication as a whole.' "

This is undoubtedly the rule where the whole article relates to one subject for all that is said on the subject must be considered in

---

[2] *Las Vegas Sun, Inc. v. Franklin,* 74 Nev. 282, 329 P.2d 867 (1958) (Court held that headline may be construed apart from its accompanying article since public frequently reads only the headline); *Schermerhorn, supra,* at ___, 426 N.Y.S.2d at 283 ("If [the headline] is not a fair index [of the article], then the headline must be examined independently to determine whether it is actionable under the general principles of libel. That the defamatory meaning of the headline may be dispelled by a reading of the entire article is of no avail to the publisher.").

[3] *Fairbanks Publishing Co. v. Pitka,* 376 P.2d 190 (Alaska 1962); *Reardon v. News-Journal Co.,* 53 Del. 29, 164 A.2d 263 (1960); *Floyd v. Atlanta Newspaper, Inc.,* 102 Ga. App. 840, 117 S.E.2d 906 (1960); *Ledger-Enquirer Co. v. Brown,* 214 Ga. 422, 105 S.E.2d 229 conformed to 98 Ga. 462, 106 S.E.2d 61 (1958); *Cook v. Atlanta Newspaper, Inc.,* 98 Ga. App. 818, 107 S.E.2d 260 (1959) ("In construing a newspaper article, the headline must be considered an integral part thereof."); *Reed v. Albanese,* 78 Ill. App. 2d 53, 223 N.E.2d 419 (1966); *Cochran v. Indianapolis Newspaper, Inc.* 78 Ind. App. 53, 372 N.E.2d 1211 (Ct. App. 1978) (A determination of whether an article implied a defamatory message "necessitates that the whole publication be considered . . . . The place and position of an item in a publication are to be considered . . . as are the headlines of the articles." (Citation omitted.) ); *Steenson v. Wallace,* 144 Kan. 730, 62 P.2d 907 (1936); *Mulina v. Item Co.,* 217 La. 842, 47 S.2d 560 (1950); *Cross v. Guy Gannett Publishing Co.,* 151 Me. 491, 121 A.2d 355 (1956); *Grossman v. Globe-Democrat Pub. Co.,* 347 Mo. 869, 149 S.W.2d 362 (1941); *Painter v. E.W. Scripps Co.,* 104 Ohio App. 237, 148 N.E.2d 503 (1957); *Bray v. Providence Journal Co.,* 101 R.I. 111, 220 A.2d 531, 535 (1966) ("[I]n considering whether the article was defamatory of plaintiff, both the headline and the body of the article were to be considered as one document."); *Ross v. Columbia Newspapers,* 266 S.C. 75, 221 S.E.2d 770 (1976); *Annot.,* 95 A.L.R.3d 660 (1979).

order to determine the sense in which the article would rationally be understood by those reading it.

*Kahanamoku, supra,* at 714.

Reading the headline and the body of the article as a whole, we believe that the publication is incapable of supporting the defamatory inference that appellant acted unethically. While the headline may raise questions in the minds of its readers, the article specifically states, "[u]nder the County's ehtics [sic] regulations, a government official acting on something in which his brother has a financial interest *is not* considered in conflict." (Emphasis added.)

As to the statement the "Board of Ethics initially called [the previous case] a conflict of interest," appellant alleges that the article accuses him of having voted on a matter while in conflict of interest; however, when read in connection with the rest of the sentence, "but after Fernandes appealed, the board reversed its opinion, saying *it had been mistaken,*" (emphasis added) we believe that publication is incapable of supporting the defamatory inference urged by appellant. The article never accuses appellant of voting unethically, rather, it states that the board mistakenly thought appellant was in conflict but upon reconsideration, it realized that it was in error.

## III.

We hold that the publication was incapable of bearing the defamatory meaning ascribed to it by appellant as a matter of law. Thus, the trial court did not err in granting appellees' motion for summary judgment.

Affirmed.

*Michael R. Salling* and *Lehua Fernandes Salling (Fernandes Salling & Salling,* of counsel) on the briefs for appellant.

*Jeffrey S. Portnoy (Cades Schutte Fleming & Wright,* of counsel) on the briefs for appellees.